Rex Charles PECK, Plaintiff-Appellee,

v.

FORD MOTOR COMPANY, Defendant-Appellant.

No. 78-1192.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1979.

Decided July 18, 1979.

James A. Strain, Indianapolis, Ind., for defendant-appellant.

Edgar W. Bayliff, Kokomo, Ind., for plaintiff-appellee.

Before PELL and BAUER, Circuit Judges, and HOFFMAN, Senior District Judge.*

PELL, Circuit Judge.

The defendant in this diversity case, Ford Motor Company, (Ford), appeals from a judgment of $500,000 entered in favor of the plaintiff, Rex Peck. The basis of the plaintiff's claim was injuries sustained when the truck he was driving collided with a truck manufactured by the defendant. The defendant raises a number of issues on appeal. The only issue that we consider, however, is whether the trial court erred in ruling that the evidence of proximate cause was sufficient to support the jury's verdict. Before we discuss the merits of the defendant's argument that no reasonable jury could have found proximate cause, we must summarize the facts in some detail. There is little conflict in the facts material to the issue of proximate causation. When the facts are not clear, however, we shall view them for the purpose of this appeal in the light most favorable to the plaintiff.

At approximately 7:00 a. m. on January 16, 1974, a truck manufactured by Ford and driven by Ervin Melton, an employee of Hunter Supply Co., Inc., left Indianapolis with a load of 20,000 pounds of steel. Hunter Supply had purchased the truck only five weeks earlier and it had only been driven 330 miles. As Melton was bypassing Logansport, Indiana, he pulled off the highway for a rest stop, putting the truck in neutral gear and leaving the engine running. When Melton returned to the truck, he noticed a slight difficulty putting the truck in gear. Despite this difficulty, the truck was able to reach road speed. As Melton traveled north on the bypass he encountered a grade where the bypass had been built into an overpass. Here the road widened into four lanes with a grass median. As the truck climbed the slight grade of the overpass, it began to lose speed.

* Senior District Judge Walter E. Hoffman of the Eastern District of Virginia is sitting by designation.

Melton tried unsuccessfully to shift into a lower gear as the truck continued to slow down. The truck traveled about one hundred feet from the time it began to slow down until it stopped. Melton testified that he had time to move the truck at least partly off the road onto the berm after he realized it would not shift. Instead of doing so, Melton attempted to resume speed until the truck stopped in the middle of the right northbound lane of the bypass.

When the truck stopped it was 8:30 a. m. at the earliest, 9:00 a. m. at the latest. The weather was slightly overcast, but visibility was good, and the pavement was clear and dry. Melton immediately turned on the truck's emergency flashers. Melton placed three safety reflectors behind the truck. The reflectors used by Melton, however, were not proper for daytime; ICC regulations require the use of flags. Furthermore, the rearmost reflector was placed only 51 feet from the truck, rather than the required distance of 100 feet. Melton then left the truck unattended and walked to a nearby house to call his employer. After experiencing some difficulty finding a wrecker in the vicinity, Melton's employer told him to go to Logansport and to wait for a wrecker to arrive from Indianapolis. Melton never called the police, although the police would have sent someone to direct traffic around the truck. The plaintiff concedes that Melton was "unquestionably negligent in failing to put out proper warning signs and in failing to put them out at proper locations."

Later the same morning, the plaintiff, a truck driver, picked up a load of meat at a Logansport packing house. The plaintiff left Logansport around 12:00 noon. The plaintiff approached the Logansport bypass from a smaller access road. Before turning north onto the bypass, the plaintiff looked north and south. The plaintiff, however, did not see the disabled truck three-quarters of a mile to the north, although his view was not obstructed. The plaintiff turned onto the bypass and had traveled about sixty to one hundred feet when he was passed by a large furniture van. The plaintiff reached road speed, about forty miles per hour, traveling behind the van. The plaintiff was never more than 120 feet behind the van, although at the speed he was traveling, it would have required about two truck lengths, or 110 feet, to stop. The plaintiff testified that the van completely obstructed his view of the truck stopped on the highway.[1] Soon after the bypass widened to four lanes, the van, followed by the plaintiff, reached the overpass. At the time the trucks reached the overpass, the plaintiff was traveling only 65 feet, or just over one truck length, behind the van. Suddenly the van pulled to the left lane to pass the disabled truck. The plaintiff slowed when he first saw the disabled truck, swerved to the right and then to the left, but was unable to stop before colliding with the truck. The plaintiff sustained severe injuries and is permanently disabled.

The first time this case went to trial, both Hunter Supply and Ford were defendants. The plaintiff's theory of recovery against both defendants was negligence, the court having dismissed the strict liability count against Ford. At the end of the plaintiff's case, the plaintiff and Hunter Supply entered a loan receipt agreement in the amount of $175,000, resulting in the dis-

---

1. There is some controversy between the parties about whether the plaintiff's conduct was negligent. Indiana law provides that trucks shall not travel within 300 feet of each other, except when passing or in truck lanes. Ind. Code § 9–4–1–73. The plaintiff argues that his conduct was not negligent per se because the 300 foot interval required by statute was designed only to prevent convoys, not rear-end collisions between trucks. See Dreibelbis v. Bennett, 162 Ind.App. 414, 319 N.E.2d 634 (1974). This analysis of the purpose and thus the "protected class" created by a statute would be relevant if negligence were a defense here. It is not a defense to strict liability, however, so we do not express any opinion about the purpose of the statute or negligence per se. Nevertheless, the failure of the plaintiff to obey the interval laws is relevant to the issue of the foreseeability of the accident, although not decisive of liability. See Gregory v. White Truck & Equipment Co., 163 Ind.App. 240, 323 N.E.2d 280, 286–87 (1975). The jury was therefore properly permitted to consider this evidence, and we consider it relevant to this appeal.

missal of Hunter Supply from the action. The jury was not informed of the loan receipt agreement but was instructed to disregard prior references to Hunter Supply and not to speculate as to the reason for the dismissal. The jury returned a verdict against Ford in the amount of $100,000. The plaintiff moved for a new trial on the issue of damages. The court, however, ordered a new trial on all issues.

By the time of the second trial, the Indiana Court of Appeals in the interim having handed down *Chrysler v. Alumbaugh,* Ind. App., 342 N.E.2d 908 (1976), discussed *infra,* plaintiff had dropped the negligence count and, pursuant to court leave, had reinstated its strict liability count, which was the sole theory pursued in the later trial. The jury found for the plaintiff and awarded damages of $500,000.

■ For the purpose of our decision on appeal, we need not discuss at length the nature of the defect. We shall assume that the jury correctly found that the Ford truck involved left the manufacturer with a defect. We shall also assume, although there was evidence to the contrary, that the defect caused the transmission to lock, forcing the truck to slow down and stop while traveling on the highway. The only issue we shall consider is whether the jury could have found that this defect was a proximate cause of the plaintiff's injuries. Initially on this issue, we recognize that it is normally for the jury to decide whether proximate cause has been established by a fair preponderance of the evidence. If different minds might reasonably draw different inferences from the facts given, then the court must defer to the judgment of the jury on the accompanying issues of foreseeability and the effect of an intervening cause. *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847 (1966). If the evidence permits only one reasonable conclusion on the question of proximate cause, however, the propriety of submitting the issue to the jury is a question of law. *Fruehauf Trailer Division v. Thornton,* Ind.App., 366 N.E.2d 21, 25 (1977).

■ The premise of our discussion is that the breakdown of the Ford truck was a cause of the plaintiff's injuries. In determining "proximate causation," however, we are not concerned with actual causation. Instead we must determine whether the courts of Indiana would hold that Ford was under a duty to protect the plaintiff against the injuries which occurred here. *See* W. Prosser, Law of Torts § 42 at 244 (4th ed. 1971). In the absence of controlling Indiana authority we must attempt to determine the decision the Indiana courts would reach, keeping in mind that legal standards of proximate cause are based on policy. The extent of a manufacturer's responsibility for building a defective product has been given consideration by the Indiana courts and to the extent that the Indiana cases reflect upon the resolution of the present issue we will look to those cases, and to the extent the precise issue before us has not been reached we must attempt to delineate the bounds of Ford's responsibility in the manner most likely to serve the policies underlying the Indiana laws and do so in the manner we believe the Indiana courts would.

The plaintiff on this appeal concedes that, in Indiana, foreseeability is an essential element of proximate causation. From this premise the plaintiff constructs his argument that the defendant Ford could foresee that the drivers of defective trucks may be "limited in their abilities and may not do those things which would prevent Ford's wrong from afflicting injuries." Furthermore, according to the plaintiff, Ford could foresee that wrecker service might not be immediately available for damaged trucks and that the trucks might have to be left unattended while help was sought. Finally, according to the plaintiff, the passage of a fairly long period of time is not decisive of the issue of liability.

These arguments, however, fail to take into account what appears to us to be a somewhat cautious approach by the Indiana courts in extending the strict liability of manufacturers for defective products. The source of Ford's liability in this case is section 402A of the Restatement (Second)

of Torts.[2] *Ayr-Way Stores, Inc. v. Chitwood*, 261 Ind. 86, 300 N.E.2d 335 (1973). Only recently has the Indiana Court of Appeals held a manufacturer liable under section 402A to "bystanders" in addition to users and consumers. *See, e. g., Gilbert v. Stone City Construction Co., Inc.*, Ind.App., 357 N.E.2d 738 (1976); *Chrysler Corp. v. Alumbaugh*, Ind.App., 342 N.E.2d 908 (1976). The Indiana Supreme Court has never expressly ruled on the issue. In the *Chrysler* case, the defendant manufactured a pickup truck with defective brakes. The pickup truck was traveling in traffic behind the plaintiff's automobile. Traffic slowed, the driver of the pickup truck applied his brakes, and suddenly the truck veered to the left, striking another car. That car then ran into the rear of the plaintiff's automobile, causing the plaintiff to run off the road. The Indiana Court of Appeals noted that neither of the policies behind strict liability required limitation of the defendant's liability to the driver of the pickup. From this analysis the court concluded that bystanders, as a class, should not arbitrarily be excluded from recovery. The court, however, emphasized that the extension of liability to bystanders is circumscribed by a requirement of reasonable foreseeability:

> Application of 402A to bystanders should be limited to those whom the manufacturer or supplier should reasonably foresee as being subject to the harm caused by the defect. 342 N.E.2d at 917.

■ Most helpful to our analysis is the court's application of that principle to the facts in *Chrysler*:

> Here it was reasonably foreseeable that if Chrysler's vehicle was unreasonably dangerous due to a defective braking system, the occupants of other vehicles *being operated on the highway in close proximity to the Chrysler vehicle* were subject to harm from the defect.

342 N.E.2d at 917. (Emphasis added.) The defect in the Ford truck in this case caused the transmission to lock and the truck to slow down unexpectedly in traffic. Like the brakes in the *Chrysler case,* this defect would have been a serious hazard to traffic in the immediate vicinity. Unlike the defect in *Chrysler,* however, the defect here did not cause any damage at that time. The truck rolled to a stop without incident. Without being precise as to the exact moment, under the guidance furnished by the Indiana decisions presently available, it would appear that shortly after the truck came to a stop on the highway and other vehicles in the area had safely cleared the stopped truck, Ford had no further duty on the facts of this case to prevent harm. Its tort had "spent its force."[3] That duty had

2. Section 402A provides:

Special Liability of Seller of
Product for Physical Harm to
User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

3. *Whitehead v. Republic Gear Co.*, 102 F.2d 84, 85 (9th Cir. 1939). The *Whitehead* case, cited by the defendant, is factually very similar to the case before us and is persuasive authority for nonliability. The defendant in *Whitehead* was the manufacturer of a truck axle which broke while the truck was moving in traffic. The plaintiffs, occupants of a car which collided with the truck, alleged in their complaint that the truck was stopped on the highway, unable to move. The court held that the defendant manufacturer was not liable as a matter of law:

> While so stopped, "and before it could be removed from the highway", it was struck by appellants' car. It thus appears that before the collision occurred the truck had become stationary and appellee's negligence had spent its force. *It is not indicated that appellants' car was then in the vicinity.* There is no allegation that the truck stopped suddenly or in such manner that the accident could not have been avoided, no allegation that it was

passed to the driver who was clearly in the best position to prevent further harm.

■ The law pertaining to proximate cause and its element of foreseeability has been primarily developed in negligence cases and the cases in that area give us further guidance. To expand Ford's responsibility to those beyond the immediate vicinity at the time of the breakdown would also contravene the longstanding rule formed in negligence cases that when the defendant's negligence merely created a "condition" by which the subsequent injury was made possible, there is no proximate cause relationship between the negligence and the injury. *Schroer v. Edward J. Funk & Sons, Inc.,* 142 Ind.App. 223, 233 N.E.2d 680 (1968); *Slinkard v. Babb,* 125 Ind.App. 76, 112 N.E.2d 876 (1954). In *Slinkard* the plaintiff was driving an automobile on an icy bridge at night, followed by an automobile driven by the defendant. The defendant ran into the rear end of the plaintiff's automobile, and the cars came to a stop on the bridge. In less than a minute, another motorist struck the defendant's car, which again ran into the plaintiff, causing injuries. The plaintiff sued the defendant for injuries, basing recovery on negligence leading to the first collision. The court held that the negligent driving of the defendant merely created a condition upon which the subsequent intervening force acted. That the defendant's driving would lead to a second collision was unforeseeable as a matter of law. Similarly, in *Schroer,* the defendant's truck collided with an automobile, and the two vehicles came to rest in the highway. Police arrived to direct traffic, but over one-half hour after the accident, the plaintiff approached the scene of the accident and collided with a truck stopped by the police. Applying the "mere condition" principle, the Indiana court held that the defendant's negligence in driving the truck was not the proximate cause of the

second collision, holding as a matter of law that the defendant "could not have reasonably foreseen the occurrence of the subsequent accident." 233 N.E.2d at 684.

The plaintiff challenges the defendant's reliance on these cases, citing *Dreibelbis v. Bennett,* 162 Ind.App. 414, 319 N.E.2d 634 (1974). In *Dreibelbis* the defendant failed to place appropriate warning devices on the highway following a collision, and the plaintiff, who stopped to offer assistance, was injured when a car swerved to avoid hitting the truck. The Court of Appeals held that the *Schroer* decision did not preclude a finding of proximate cause, because the negligence of the truck driver *in failing to post warning devices* did more than create a condition. The basis of the tort itself was the failure to prevent additional harm from occurring, not the negligent driving of the truck. *Dreibelbis,* of course, supports recovery by the plaintiff in this case against the employer of the truck driver, whose liability is not at issue here. Ford is charged with manufacturing a defective truck, and the plaintiff has not alleged, nor could he very well, that Ford had a duty, after the truck broke down on the highway, to post warning devices or to take other affirmative action of a nature which would independently eliminate the status as being purely one of a "condition."

Thus, even if we were to assume, without any present basis therefor, that the Indiana courts would now extend foreseeability in strict liability cases of the present type beyond its existing perimeters to bystanders other than those in vehicles in close proximity to the defective vehicle at the time it ceases moving, we do not believe that the Indiana courts would find foreseeability to exist as a matter of law where all of the following factors were in combination:

(1) The truck driver abandoned the vehicle in the middle of a lane of a heavily

---

properly lighted or that the collision took place before any warning could be given of the presence of this obstacle in the lane of travel. The only reasonable inference to be drawn from the facts stated is that the accident resulted from the negligence of the

truck driver in failing to give proper warning. At best the complaint discloses that the subsequent collision was a remote consequence of appellee's negligence. (Emphasis added.) (Footnotes and citations omitted.)

102 F.2d at 85.

traveled highway for at least three hours.

(2) He failed to post proper warning devices.

(3) Wrecking service was not promptly available in the nearby cities of Logansport, Peru, and Kokomo, whose populations according to the 1970 census were respectively 18,000, 13,600, and 42,800. Instead of finding such a local source, after some effort, a call was made for wrecker service to Indianapolis, more than 60 miles away.

(4) Neither the driver nor any passerby in the three hour period called the police.

(5) No regular patrolling State policeman happened to come by and see the traffic hazard sitting in the middle of a lane.

(6) Although he had time and the opportunity, the truck driver did not attempt to pull the truck off, or at least partially off, the portion of the highway on which traffic regularly moved.

(7) The plaintiff failed to see the abandoned truck when he pulled onto the bypass, although the weather permitted clear vision and there were no obstructions to the view.

(8) All other traffic on the bypass had managed to avoid a collision with the truck on this well traveled road during a three hour period.

(9) The plaintiff followed the vehicle ahead of him too closely, in violation of Indiana law, and did not see the disabled truck in time to avoid hitting it.

(10) The transmission, although defective so as to cause it to lock, would nevertheless permit the truck to be so ambulatory as to allow it to start out from a stop only a few minutes before it became completely nonfunctional.

(11) The truck driver, although experiencing difficulty in putting the truck in gear after his rest stop, neverthe-

less went out on the traveled highway without any effort to ascertain the cause of the difficulty.

(12) The truck driver's employer, notwithstanding its own considerable potential for liability, did not more affirmatively and forcefully direct its employee to continue making every possible effort to secure a locally based wrecker so as to remove the vehicle from the highway as expeditiously as possible, or, at the very least, that he was not required to see to it that adequate continuing warning be given to other vehicles until the truck could be removed.

We recognize that it is a generally accepted principle that foreseeability does not mean that the precise hazard or the exact consequences which were encountered should have been foreseen. *New York, New Haven & Hartford R. Co. v. Leary,* 204 F.2d 461, 467 (1st Cir. 1953). This does not mean, however, that the manufacturer is responsible for an incident involving its defective product which was not reasonably foreseeable.

The Supreme Court of Illinois recognized the existence of a viable claim against a manufacturer by a nonuser of a product approximately two years earlier than did the Indiana courts and its treatment of the matter is approximately the same as that of the Indiana decisions. *Winnett v. Winnett,* 57 Ill.2d 7, 310 N.E.2d 1 (1974). In that case, the court set forth an analysis of foreseeability which we believe the Indiana courts would follow in the present situation:

Whether the plaintiff here is an individual who is entitled to the protections afforded by the concepts of strict tort liability depends upon whether it can be fairly said that her conduct . . . was reasonably foreseeable. A foreseeability test, however, is not intended to bring within the scope of the defendant's liability every injury that might possibly occur. "In a sense, in retrospect almost nothing is entirely unforeseeable." Foreseeability means that which it is *objec-*

*tively reasonable* to expect, not merely, what might conceivably occur. (Citations omitted; emphasis in the original.)

In the present case, we hold that it was not objectively reasonable to expect the manufacturer of the truck to foresee the occurrence resulting from the extremely unusual combination of circumstances [4] set forth above which resulted in the plaintiff's unfortunate injury. We agree with the Illinois Supreme Court in *Winnett* that any other approach to the problem results in making the manufacturer a virtual insurer of the product. *Id.* at 4. As the Indiana Supreme Court stated in *J. I. Case Company v. Sandefur*, 245 Ind. 213, 222, 197 N.E.2d 519, 523 (1960), the manufacturer "is not an insurer against accident and is not obligated to produce only accident-proof machines." Putting the matter another way, the plaintiff's position ultimately is that if a defective product is in any way associated with an injury-producing accident there is a valid claim under the law of strict liability irrespective of the quantum of supervening causes and the lack of objective foreseeability. We do not believe that this is the law of Indiana.

For the reasons we have set out, we conclude that the district court erred in not granting the defendant's motions for a directed verdict and judgment notwithstanding the verdict. Accordingly, the judgment of the district court is reversed and the cause is remanded for the entry of judgment for the defendant.

Reversed and Remanded.

4. Indeed, the combination is so extensive that a lesser combination could fairly be said to preclude foreseeability on an objectively reasonable basis.