216 N.J. Super. 79 (1987)
522 A.2d 1043
TERESA JENSEN, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF DONALD JENSEN AND KEITH JENSEN AND KEVIN JENSEN BY THEIR GUARDIAN, TERESA JENSEN, PLAINTIFFS-APPELLANTS,
v.
SCHOOLEY'S MOUNTAIN INN, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 1987.
Decided March 18, 1987.
Before Judges MICHELS, SKILLMAN and LANDAU.
*80 Arthur K. Sirkis argued the cause for appellants.
Donald M. Garson argued the cause for respondent (Joseph Buttafuoco, attorney).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs Teresa Jensen, individually and as administratrix of the Estate of Donald Jensen (Jensen) and Keith Jensen and Kevin Jensen, by their Guardian, Teresa Jensen, appeal from a summary judgment of the Law Division entered in favor of defendant Schooley's Mountain Inn, Inc. (Schooley's) in this wrongful death/liquor liability action.
The record establishes that on November 5, 1983, at approximately 1:45 p.m., Jensen entered Schooley's which is located in Long Valley, New Jersey. Plaintiffs charge that defendant's employees negligently and wrongfully served alcoholic beverages to Jensen while he was visibly intoxicated. At approximately 11:30 p.m., while still drunk, Jensen left Schooley's and drove about eight miles to Binders River Court in Mansfield Township, New Jersey. He then parked his car and, for some unknown reason, began climbing a tree. The branches near the top of the tree apparently were not strong enough to support his weight and one broke, causing Jensen to fall approximately 20 feet to the river bank. He rolled or fell into the river and drowned. According to the police report, the injuries to Jensen indicated that he was unconscious at the time he entered the water. Plaintiffs allege that defendant's wrongful conduct proximately caused Jensen's "judgment, alertness, care, caution, coordination and visual and auditory acuity [to be] impaired" which in turn resulted in his fall and eventual drowning death.
Maintaining that, as a matter of law, it could not be liable under the facts as alleged by plaintiffs, defendant moved for summary judgment. As it was required to do on a motion for summary judgment, the trial court accepted the allegation that *81 defendant served Jensen alcoholic beverages when it knew or should have reasonably known that he was intoxicated. Nonetheless, the trial court concluded that Jensen's accident and death were not reasonably foreseeable and granted the motion. This appeal followed.
In light of the facts of this case, we are convinced that there should be no liability and therefore hold that the trial court properly granted summary judgment. The elements of a negligence action have been set forth by our Supreme Court in Caputzal v. The Lindsay Co., 48 N.J. 69, 74 (1966), as follows:
The two applicable concepts in the case of nonintentional conduct or failure to act are the very basic ones of duty, and the breach thereof, and proximate, or legal, cause of the injury complained of.
The existence of a duty to exercise care is determined by whether or not the risk or event to be guarded against is "reasonably within the range of apprehension of injury to another person." Hill v. Yaskin, 75 N.J. 139, 144 (1977); McCabe v. N.J. Turnpike Auth., 35 N.J. 26, 35 (1961); See also Restatement, Torts 2d, § 284. This hypothetical standard brings into play the matter of foreseeability in determining what the reasonable man should recognize as involving an unreasonable risk of harm. Caputzal, supra, 48 N.J. at 75. As Justice Hall so appropriately noted in Caputzal, "Foreseeability is not solely a mere matter of logic, since anything is foreseeable, but frequently involves questions of policy as well." Ibid. Stated differently, "whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Kelly v. Gwinnell, 96 N.J. 538, 544 (1984) (Emphasis in the original) (citing Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583 (1962)).
Likewise, the concept of proximate causation is tied to policy considerations. As Justice Hall further observed in Caputzal:
Utilization of that term [proximate cause] to draw judicial lines beyond which liability will not be extended is fundamentally as an instrument of fairness and *82 policy, although the conclusion is frequently expressed in the confusing language of causation, "foreseeability" and "natural and probable consequences." ... Dean Prosser puts it well in this fashion:
"As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability . ..
Thus, the current Restatement contains this qualification, very appropriate in this case:
"The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." ...
[48 N.J. at 77-78 (Citations omitted)].
See also Brown v. United States Stove Co., 98 N.J. 155, 173 (1984).
Applying these principles here, we are satisfied that there is no justification for imposing liability upon defendant for the death of Jensen. The claim in this case is bizarre. It cannot be disputed that Jensen's climbing to the top of the tree, falling and rendering himself unconscious and then drowning in the river is, at the very least, an extraordinary occurrence. Such a sequence of events cannot reasonably be expected to follow from serving alcohol to one who is visibly intoxicated and, in our view, does not provide a fair, just or common sense basis to visit liability upon defendant. We are not unmindful of the extent to which parties have been held liable for injuries or deaths connected with the wrongful service of alcoholic beverages in this State. See, e.g., Buckley v. Estate of Pirolo, 101 N.J. 68 (1985); Kelly v. Gwinnell, supra; Soronen v. Olde Milford Inn, Inc., 46 N.J. 582 (1966); Rappaport v. Nichols, 31 N.J. 188 (1959); Linn v. Rand, 140 N.J. Super. 212 (App.Div. 1976); Tiger v. American Legion Post 43, 125 N.J. Super. 361 (App.Div. 1973). However, legal responsibility for the consequences of an act cannot be imposed without limit. The events here transgress the judicial line beyond which liability should not be extended as a matter of fairness or policy. See Caputzal, supra, 48 N.J. at 77. See also Prosser and Keeton on Torts (5th Edition 1984) § 41 p. 264.
*83 Our refusal to impose responsibility in the bizarre circumstances present here is supported by our recent decision in Griesenbeck by Kuttner v. Walker, 199 N.J. Super. 132 (App. Div. 1985), certif. den., 101 N.J. 264 (1985). There, we refused to impose liability upon social hosts for deaths allegedly related to the improper service of alcohol. In Griesenbeck, the Walkers' daughter, Caryl Griesenbeck, visited them at their home and, in a period of approximately two hours, had two drinks. Sometime between 11:30 p.m. and midnight, after finishing her second drink, Caryl left for her house in Montclair, located about three miles away. At 1:20 a.m., the Montclair Fire Department was notified of a fire which ultimately gutted the Griesenbeck house, killed Caryl, her husband and one of their children, and seriously injured the other child. Investigations of the incident revealed that the fire resulted from a cigarette left smoldering in a sofa and that Caryl was extremely intoxicated at the time of the fire. An expert toxicologist opined that Caryl "must have consumed at least nine alcoholic drinks prior to her death in order to have attained the blood alcohol level [indicated] in the [toxicology] report." Id. at 135.
Suit was filed on behalf of the child who survived the fire and the estate of the deceased child. Plaintiffs contended that the Walkers served liquor to Caryl Griesenbeck when she was obviously intoxicated, permitted her to leave in an impaired state and that, as a result of her impairment, Caryl caused the fire or was unable to protect her family therefrom. The trial court granted summary judgment and we affirmed. Among the reasons underlying our decision was that proximate causation had not been established. The events in that case  the mother being improperly served alcohol at defendants' house, returning to her residence where her children were presumably in bed and then causing or being unable to save her family from the fire  were too far removed from the wrongful service of alcoholic beverages to justify imposing liability upon the Walkers. Equally appropriate here are our observations in Griesenbeck that:

*84 ... Although Mrs. Griesenbeck's intoxicated condition may have contributed in some manner to the fire and the subsequent unsuccessful attempt to save herself and the children, the Walkers' conduct in serving liquor to their daughter, prior to her driving several miles to her home and an hour or more before the fire was reported, is not so closely and significantly connected with the consequences as to justify the imposition of liability upon the Walkers. If Mrs. Griesenbeck's intoxication was connected with the cause of the fire, it was such a highly extraordinary consequence that justice, fairness and common sense compel the conclusion that the Walkers' assumed conduct may not be considered the proximate cause of the death and injury which befell the Griesenbeck children. The asserted liability of the Walkers is beyond the boundary of that which might justly be deemed a foreseeably probable consequence of their conduct. [Id. at 140].
Notions of justice, fairness and common sense likewise compel the conclusion that defendant should not be held legally responsible for Jensen's death.
Accordingly, the summary judgment under review is affirmed.