669 A.2d 1378

GLORIA YUN, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF CHANG HAK YUN, A/K/A CHANG HAK YUN, DECEASED AND NAM YI YUN, GLORIA YUN, PYONG OK HWANG AND YO CHO SHIM, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. FORD MOTOR COMPANY, KIM'S MOBILE SERVICE CENTER, INC., JOHN DOE, RICHARD ROE, PETER DOE, INC., 1 THROUGH 97 (THE FOREGOING WITH THE EXCEPTION OF FORD MOTOR COMPANY, CASTLE FORD, UNIVERSAL MOTOR COACH AND KIM'S MOBILE SERVICE CENTER, INC., MILLER MANUFACTURING CORPORATION BEING A FICTITIOUS NAME OF THE PERSONS, FIRMS OR ENTITIES WHO PERFORMED WORK OR SERVICE ON THE SUBJECT MOTOR VEHICLE IN QUESTION, BEING A 1987 FORD VAN), PRECIOUS LINDERMAN AND CHARLES LINDERMAN, DEFENDANTS, AND CASTLE FORD, UNIVERSAL MOTOR COACH, AND MILLER MANUFACTURING CORPORATION, AS WELL AS THEIR EMPLOYEES, STAFF, MANAGERS AND PERSONNEL RENDERING SERVICES, DEFENDANTS-RESPONDENTS.

Argued October 11, 1995—Decided January 18, 1996.

*Seth Malkin* argued the cause for appellants (*Ferdinand & Klayman,* attorneys; *Lane M. Ferdinand,* on the brief).

*William T. Connell* argued the cause for respondent Castle Ford (*Dwyer, Connell & Lisbona,* attorneys; *Thomas R. Walters,* on the brief).

*James T. Boyle, Jr.*, argued the cause for respondent Universal Motor Coach (*Satterlee Stephens Burke & Burke*, attorneys; *Frances Marie Bradley*, on the brief).

*Paul F. Clark* argued the cause for respondent Miller Manufacturing Corporation, etc. (*Wade Clark Mulcahy*, attorneys).

PER CURIAM.

The judgment is reversed, substantially for the reasons expressed in the dissenting portion of Judge Baime's opinion in the Appellate Division, reported at 276 *N.J.Super.* at 158, 647 *A.*2d 841 (1994).

GARIBALDI, J., dissenting.

In this appeal of a products liability action, the only issue is whether the jury could have found that the alleged defect in the spare tire bracket assembly was the proximate cause of plaintiff's injuries. Proximate cause will be decided as a matter of law when "highly extraordinary" events or conduct taking place after the negligent act constitute intervening, superseding causes of injury. *Caputzal v. The Lindsay Co.* 48 *N.J.* 69, 78, 79, 222 *A.*2d 513 (1966). The conduct of plaintiff, Chang Hak Yun (Yun), was "highly extraordinary" and constituted an intervening, superseding cause. Therefore, as a matter of law, defendant, the manufacturer of the defective spare tire bracket assembly, is not liable for Mr. Yun's injuries. Defendant could not have reasonably foreseen Mr. Yun's accident. I would affirm the judgment of the Appellate Division. 276 *N.J.Super.* 142, 647 *A.*2d 841 (1994).

An essential element of proximate cause is foreseeability. When injuries resulting from negligence are not foreseeable, there can be no finding of proximate cause. *See Caputzal, supra,* 48 *N.J.* 69, 222 *A.*2d 513 (finding that water softener manufactured, sold and installed by the defendant was not proximate cause of injury suffered by the plaintiff, who on finding that his bathroom faucet emitted brownish rusty colored water, became emotionally upset and suffered a heart attack.); *Brown v. United States Stove*

*Co.,* 98 *N.J.* 155, 484 *A.*2d 1234 (1984) (holding that manufacturing design defect of free-standing space heater that was deliberately altered to operate beyond safe capacity, was not proximate cause of harm that resulted when heater exploded and set plaintiff on fire); *Jensen v. Schooley's Mountain Inn, Inc.,* 216 *N.J.Super.* 79, 82, 522 *A.*2d 1043 (App.Div.), *certif. denied,* 108 *N.J.* 181, 528 *A.*2d 11 (1987) (holding that serving alcohol to visibly intoxicated person was not proximate cause of injuries sustained by decedent, who subsequently drove car eight miles, parked, climbed tree, fell out of tree, rolled into river and drowned); *Vallillo v. Muskin Corp.,* 212 *N.J.Super.* 155, 162, 514 *A.*2d 528 (1986), *certif. denied.* 111 *N.J.* 624, 546 *A.*2d 540 (1988) (holding that pool manufacturer's failure to provide adequate warnings against diving was not proximate cause of any injuries because "a person experienced in the use of the product, who has indicated by his actions that he recognized that his conduct runs the risk of a particular danger, will not be permitted to absolve himself from responsibility for an objectively anticipatable injury resulting therefrom").

In the present case, the issue is whether the manufacturer could reasonably have foreseen that the defect in its spare tire bracket assembly would cause plaintiff's injuries. Foreseeability must be determined by "what the reasonable man should recognize as involving an unreasonable risk of harm." *Caputzal, supra,* 48 *N.J.* at 75, 222 *A.*2d 513. Defendant's conduct is to be measured by the reaction to be expected of normal persons. *Id.* at 76, 222 *A.*2d 513.

The events in this case were not within the objective realm of "foreseeability." Mr. Yun and his daughter, the driver of the car, had been advised by Kim's Mobil Station nearly one month before the accident that the spare tire assembly had been damaged in a prior accident and should be repaired and replaced. Despite that warning, the repairs were not made and the Yun family continued to drive the car. Then, the spare tire assembly, as predicted, fell off Yun's car. Neither the tire nor the car was a danger to any motorist. Indeed, the car was off the road and could be driven

home. Mr. Yun however, the sixty-five year old plaintiff, ran across the Garden State Parkway, a rain slicked highway twice, at night, to retrieve a bald tire and parts of a broken tire assembly. These events "transgress[ed] the judicial line beyond which liability should not be extended as a matter of fairness and policy." *Jensen, supra,* 216 *N.J.Super.* at 82, 522 *A.*2d 1043.

It may be foreseeable that a person would attempt to recover something of value that has fallen from a car if doing so would not cause him a substantial risk of harm. It might be foreseeable that he would cross a road or highway on a clear night; but it would not be foreseeable that he would cross the Garden State Parkway, on a rainy night with no visibility, to recover a useless tire that presented no threat of harm. The Appellate Division properly held that "the present case presents extraordinary circumstances." 276 *N.J.Super.* at 152, 647 *A.*2d 841. Mr. Yun's "attempt to retrieve the parts involved crossing the Parkway in both directions—an activity which cannot be described as anything short of extraordinarily dangerous, if not suicidal, as the action proved"—was "highly extraordinary." *Ibid.* I agree.

The Seventh Circuit decided an analogous case in *Peck v. Ford Motor Co.,* 603 *F.*2d 1240 (1979). In *Peck,* a truck manufactured by Ford broke down in the right lane of a highway some time between 8:30 and 9:00 a.m. *Id.* at 1242. The plaintiff, driving another truck, approached the disabled Ford vehicle around noon. His view was obstructed due to a van travelling in front of him. When the van pulled out of the right lane to avoid the disabled Ford, the plaintiff did not have time to stop or change lanes and crashed into the truck, sustaining serious injuries. *Id.* at 1242. The *Peck* court found, as a matter of law, that no proximate cause existed between the defect that caused the Ford truck to break down and the plaintiff's subsequent collision with the disabled vehicle. *Id.* at 1244. The Seventh Circuit explained that ". . . the defect here did not cause any damage at that time." *Ibid.* "[A]fter the truck came to a stop on the highway and other vehicles in the area had safely cleared the stopped truck, Ford had

no further duty on the facts of this case to prevent harm" because the tort had " 'spent its force.' " *Ibid.* (citation omitted).

Similarly, in this case, the defective assembly did not cause any injury or damage. Once the spare tire assembly fell off, the driver stopped on the shoulder of the highway without incident and the tire came to rest against the wooden guardrail in the middle of the parkway. Neither the tire nor the car posed a threat to anyone. At this point, the "tort had spent its force."

It was Mr. Yun's subsequent actions that caused his injuries. He assumed an obvious and substantial risk when he crossed the Garden State Parkway on that dark, rainy night. The danger of crossing a major highway under such conditions is obvious. The Legislature has enacted laws prohibiting the crossing of divided roads. *N.J.S.A.* 39:4–34 provides in part: "It shall be unlawful for a pedestrian to cross any highway having roadways separated by a medial barrier, except where provision is made for pedestrian crossing." Likewise, *N.J.A.C.* 19:8–1.9(b) prohibits pedestrian traffic on the Parkway, "except on sidewalks, footpaths and other areas specifically designated by the Authority for that purpose." I cite those laws not as evidence that Mr. Yun violated the law, but as proof that society has concluded that such actions are dangerous, unreasonable and, therefore, prohibited. His disregard for his safety was the proximate cause of his tragic injuries and constituted an intervening, superseding cause that shattered the chain of causation from the defendant. As the court observed in *Peck:*

> A foreseeability test, however, is not intended to bring within the scope of the defendant's liability every injury that might possibly occur. 'In a sense, in retrospect almost nothing is entirely unforeseeable.' Foreseeability means that which it is objectively reasonable to expect, not merely, what might conceivably occur.
>
> [*Peck, supra,* 603 *F.*2d at 1246–47 (Citations omitted)]

As a matter of law, defendant should not be liable. That position is consistent with the *Restatement (Second) of Torts* § 435(2) (1965):

> The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.

*See also* William L. Prosser, *Law of Torts*, (Handbook Series), Sec. 41, at 240 (3d. ed. 1964) (observing that "[a]s a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability").

The summary judgment procedure is "designed to achieve an inexpensive and expeditious termination of proceedings when there is an insufficient legal basis for recovery." *Vallillo v. Muskin Corp., supra,* 212 *N.J.Super* at 158, 514 *A.*2d 528. Just this term, the Court in *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 666 *A.*2d 146 (1995), adopted a standard that requires the motion judge to engage in an analytical process essentially the same as that necessary to rule on a motion for a directed verdict: whether the evidence presents sufficient disagreement to require submissions to a jury or whether it was so one-sided that one party must prevail as a matter of law. That weighing process requires the court to be guided by the same evidentiary standard of proof that would apply at the time on the merits when deciding whether there exists a "genuine issue" of material fact. We held that rule shall apply to all cases pending in the appellate courts. We also emphasized in *Brill* that "[t]he thrust of today's decision is to encourage trial courts not to refrain from granting summary judgement when the proper circumstances present themselves." *Ibid.* This case presents the proper circumstances.

I conclude as did the Appellate Division that:

> [The] joint decision, [by Mr. Yun and his daughter], thirty days before this accident, not to repair the allegedly defective assembly and [Yun's] flagrant disregard for his personal safety by crossing the Parkway late at night and the injuries he received when struck by Linderman's vehicle constitute intervening superseding causes. Logic, common sense, justice and fairness dictate that the alleged product defect was not a proximate cause of [Yun's] injury.
>
> [*Yun, supra,* 276 *N.J.Super.* at 155–56, 647 *A.*2d 841]

Applying the summary judgment standard, I find as did the trial court and the majority of the Appellate Division, that the record amply demonstrates that defendant's defective spare tire assembly was not the proximate cause of plaintiff's injuries.

*For reversal* —Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, STEIN, and COLEMAN—6.

*For affirmance*—Justice GARIBALDI—1.