720 A.2d 981 (1998)
316 N.J. Super. 554
Magdalena TRUCHAN, Plaintiff-Respondent/Cross-Appellant,
v.
NISSAN MOTOR CORPORATION IN U.S.A. and Nissan Motor Manufacturing Corporation, U.S.A., Defendants-Appellants/Cross-Respondents, and
All Brands Nissan, Thomas Pezza, Stacy Sachais, and Nissan Motor Co., Ltd., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued November 18, 1998.
Decided December 15, 1998.
*982 Aaron Twerski, New York City, for appellants/cross-respondents (Lavin, Coleman, O'Neil, Ricci, Rinarelli & Gray, Philadelphia, PA; and Mr. Twerski and James A. Henderson, Jr., Ithaca, NY, admitted pro hac vice, attorneys; Gerard Cedrone and Leona C. McFadden, Philadelphia, PA, on the brief; Gerald Cedrone and Mr. Twerski, on the supplemental brief).
Robert A. Vort, Tenafly and James F. Carney, Roseland, for respondent/cross-appellant (Mr. Carney, of counsel and on the brief; Mr. Vort, on the supplemental brief).
Before Judges BAIME, A.A. RODRIGUEZ and KIMMELMAN.
The opinion of the court was delivered by BAIME, P.J.A.D.
Plaintiff suffered catastrophic injuries when the automobile in which she was a rear seat passenger struck a utility pole. After settling with the owner and driver of the automobile, plaintiff proceeded to trial against Nissan Motor Corporation and Nissan Motor Manufacturing Corporation, asserting design defect and failure to warn claims. More specifically, plaintiff contended that Nissan equipped the automobile with a defectively designed seat belt and failed to warn passengers of the potential for enhanced injuries if worn above the lower abdomen. Following a protracted trial, a jury found that the seat belt was defective but that the defect was not a proximate cause of plaintiff's injuries. The Law Division granted plaintiff's motion for a new trial as to all issues. Nissan sought leave to appeal, contending that the jury's verdict should be reinstated. Plaintiff filed a cross-motion for leave to appeal, arguing that the jury's finding of a product defect should be preserved, and that the new trial should concern only the question of proximate cause and damages. We granted both motions.

I.
We need not recount the facts at length. On May 14, 1994, plaintiff, then twenty-three years old, and several friends spent the night in Hoboken attending a bar and a private party. Although the facts were disputed, it *983 appears that plaintiff consumed substantial alcoholic beverages in the course of the evening.
At approximately 5:00 a.m. the next day, plaintiff and her two friends, Thomas Pezza and Stacy Sachais, left the party and entered Sachais's 1988 Nissan Sentra. Pezza sat in the driver's seat, Sachais in the front passenger seat and plaintiff in the rear passenger seat behind Sachais. Neither Pezza nor Sachais wore seat belts. Plaintiff wore the two point lap belt provided for the rear seat.
Obviously inebriated, Pezza drove the automobile approximately twelve blocks, swerving slowly from right to left. Ultimately, the vehicle swerved off the right side of the road, striking a utility pole. At the point of impact, the car was traveling at approximately twenty-two to twenty-eight miles per hour. When emergency crews arrived, they found Pezza unconscious and slumped over the steering wheel. Pezza suffered only minor injuries. When Sachais was removed from the automobile, she smelled of alcohol and appeared combative and disoriented. She, too, suffered only comparatively minor injuries.
Plaintiff was found seated in the rear passenger seat, wearing her lap belt and leaning against the right rear window. She was immediately transported to Jersey City Medical Center. Medical personnel noticed a deep bruise beginning on the area of plaintiff's navel and extending across her right side ending on her right flank. Dr. Paul Vessa, plaintiff's treating spinal surgeon, concluded that the bruise was the result of blunt trauma caused by plaintiff's violent contact with the lap belt. According to Vessa, plaintiff suffered a "hyperflexion distraction injury" caused by the lap belt holding her pelvis in the seat, which allowed for the "unrestrained forward flexion of her upper torso. "Plaintiff's spinal column was "literally ripped in half," disabling all parts of her body below the navel. Moreover, the injury resulted in a loss of blood circulation to plaintiff's small and large intestines which ultimately became gangrenous. The problem was eventually resolved by way of a colostomy.
Much of the testimony at trial pertained to plaintiff's pre-impact seating position. The experts unanimously agreed that to minimize the possibility of injury, a rear seat occupant should wear a lap belt restraint low on the hips, with the belt positioned on the anterior-superior portion of the passenger's iliac crest. Plaintiff contended that she was in an upright position at the point of impact. Plaintiff's experts asserted that Nissan had installed the seat belt anchorages in an asymmetrical manner, causing the lap restraint to "ride up" too high on the occupant's abdomen, contrary to federal motor vehicle standards. They asserted that the lap belt was inherently dangerous and breached consumers' reasonable expectations of safety. They further claimed that Nissan failed to warn users of the dangerous qualities of the lap restraint as part of her design defect claim. Plaintiff contended that safe and reasonably feasible alternatives existed at the time the vehicle was manufactured, which would have obviated the dangers posed by the lap restraint installed by Nissan. Specifically, it was argued that a three point shoulder harness lap belt would have prevented plaintiff's injuries. It was also asserted that a safer two point lap belt, which would not rise above the passenger's hips, was a feasible alternative; however, plaintiff's evidence on this point was far less detailed and specific.
In contrast, Nissan's experts concluded that plaintiff was in a slumped position tilting to her left with the seat belt positioned over her navel when the accident occurred. Based upon the pattern of bruises and the nature of the injuries sustained, they asserted that plaintiff was reclined to the left with her torso at a forty-five to ninety degree angle. Nissan's experts testified that the two point lap belt system with which the automobile was equipped satisfied all federal, state and local safety standards. Significantly, they asserted that plaintiff would have suffered the same injuries had the vehicle been equipped with the shoulder harness lap restraint system recommended by plaintiff's experts. According to their testimony, the "shoulder belt" would have locked upon the forward movement of the body propelled by the force of the collision, and would have "strategically ... followed the lie of the lap belt." They opined that the torso would *984 have "follow[ed] a horizontal arc," tearing the spinal column and resulting in the same injuries.
The trial court submitted the case to the jury based upon the three theories urged by the plaintiff. In describing plaintiff's design defect claim, the trial court told the jury to employ a "risk-utility analysis" to determine whether the danger posed by the product outweighed its benefits. Among the factors to be considered was "the availability of a substitute product or products, at the time the particular vehicle in question was manufactured, or sold, ... which would meet the same needs or perform the same function as the product [in question], but without containing the alleged defect.... In other words, ... a more safely designed product." The court stressed that Nissan's responsibility in designing the seat belt system included the duty to prevent an injury caused by the foreseeable misuse of the product. The jury was told that in applying its risk-utility analysis, it was to consider whether a reasonably feasible alternative design existed at the time the automobile was manufactured that would have cured the defect which allegedly caused plaintiff's injuries. Because this portion of the trial court's instruction is critical to our analysis of the issues presented, we quote the pertinent part of the judge's charge:
Plaintiff must also prove ... that there was available an alternative safer design, practicable under the circumstances, which would have eliminated the alleged defect in the internal restraint system and [would have] prevent[ed] her from being injured to the extent she was. Plaintiff must prove to what extent the defect in the vehicle enhanced or increased the injuries she would have suffered had an alternative design been utilized.
The trial court charged the jury that plaintiff was also required to prove that the design defect proximately caused her injuries. The court defined proximate cause in its traditional sense as meaning that the alleged design defect must have constituted "a substantial factor in producing [plaintiff's] injuries." The court noted that "proximate cause means that the defect in the product was a substantial factor, which singly or in combination with another cause, created plaintiff's injuries." The court added, albeit in another part of its charge, that if the jury were to conclude that "plaintiff would have been injured ... as she was, even if the vehicle had been designed differently, [then Nissan would be] entitled to a verdict because the alleged defect ... could not have been a substantial factor in causing her injuries."
We do not describe in detail the trial court's instructions dealing with plaintiff's failure to warn and consumer expectation claims. Suffice it to say that the same definition of proximate cause was given minus the language pertaining specifically to whether or not the same injuries would have occurred had Nissan equipped the automobile with an alternative, more safely designed restraint system.
Plaintiff requested that special interrogatories be propounded to the jury corresponding to her separate, but related claims of a product defect. The trial court initially denied plaintiff's request. Although the trial court subsequently decided to provide the jury with more specific questions, this course was never implemented. Thus, the jury was asked two questions: (1) was the product defective, and (2) was the defect a proximate cause of plaintiff's injuries? As noted earlier, the jury found that the seat belt system was defective, but it was not the proximate cause of plaintiff's injuries.
Following the jury's verdict, plaintiff moved for a new trial. The trial court issued a letter opinion granting plaintiff's motion. The trial court's articulation of its reasons is extremely unclear. Citing Jurado v. Western Gear Works, 131 N.J. 375, 619 A.2d 1312 (1993), the court concluded that the jury's verdict was "against the weight of the evidence" and constituted "a miscarriage of justice." It is against this backdrop that we consider the issues raised by the principal appeal and cross-appeal.

II.
We begin our analysis with a lament that appears all too frequently in our opinions the failure of the trial court to clearly express its reasons for taking the course of *985 action it did. Other than its cryptic allusions to "miscarriage of justice" and "weight of the evidence," the trial court did not articulate the basis for vitiating the jury's verdict. We are thus left to examine in the abstract the possible sources of the trial court's dissatisfaction with the result reached by the jury. See Ivaldi v. Ivaldi, 288 N.J.Super. 575, 582, 672 A.2d 1226 (App.Div.), rev'd, 147 N.J. 190, 685 A.2d 1319(1996).
If we were to read the trial court's order as an implicit finding that proximate cause was proven as a matter of law, we would be obliged to reverse. Ordinarily, questions of proximate cause are left to the jury for its factual determination. See Yun v. Ford Motor Co., 276 N.J.Super. 142, 160-61, 647 A.2d 841 (App.Div.1994), rev'd on dissenting opinion, 143 N.J. 162, 669 A.2d 1378 (1996); see also Scafidi v. Seiler, 119 N.J. 93, 101, 574 A.2d 398 (1990); Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 209-10, 485 A.2d 305 (1984); Rappaport v. Nichols, 31 N.J. 188, 203, 156 A.2d 1 (1959); Martin v. Bengue, Inc., 25 N.J. 359, 374, 136 A.2d 626 (1957). In the context of plaintiff's defective design claim, there was ample evidence from which the jury could reasonably have concluded that, although Nissan could feasibly have installed a safer seat belt system, plaintiff would nevertheless have suffered the exact same injuries. So too, with respect to plaintiff's failure to warn claim, the jury could reasonably have found on the evidence presented that plaintiff would not have heeded warnings had they been given. See Theer v. Philip Carey Co., 133 N.J. 610, 618-19, 628 A.2d 724 (1993); Coffman v. Keene Corp., 133 N.J. 581, 603, 628 A.2d 710 (1993); James v. Chevron U.S.A., Inc., 301 N.J.Super. 512, 540, 694 A.2d 270 (App.Div. 1997), aff'd sub nom. James v. Bessemer Processing Co., 155 N.J. 279, 714 A.2d 898 (1998). To recapitulate, the evidence pertaining to the question of proximate cause was not so one-sided as to exclude the issue from the jury's consideration.
We nevertheless agree with the trial court's conclusion that a new trial is necessary. More specifically, we are convinced that the trial court's instructions on product defect and proximate cause invited an inconsistent verdict, and that there is at least some reason to believe the jury accepted this invitation.
Whether a product has been defectively designed ordinarily involves a "risk-utility analysis" under which a manufacturer is held liable only "if the danger posed by the product outweighs the benefits of the way the product was designed and marketed." Johansen v. Makita U.S.A., Inc., 128 N.J. 86, 95, 607 A.2d 637 (1992). Our Supreme Court has identified seven factors relevant to such inquiries. O'Brien v. Muskin Corp., 94 N.J. 169, 182, 463 A.2d 298 (1983). They include:
1. The usefulness and desirability of the productits utility to the user and to the public as a whole.
2. The safety aspects of the product the likelihood that it will cause injury, and the probable seriousness of the injury.
3. The availability of a substitute product [that] would meet the need and not be as unsafe.
4. The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
5. The user's ability to avoid danger by the exercise of care in the use of the product.
6. The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions.
7. The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

[Ibid. (quoting Cepeda v. Cumberland Eng'g Co., 76 N.J. 152, 174, 386 A.2d 816 (1978), overruled by Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 406 A.2d 140 (1979)) (overruling Cepeda "insofar as it held contributory negligence is a viable defense in a design defect case").]
An evaluation of these factors "may justify a conclusion that even though no alternative *986 design existed which would have made a product safer, the product is `so dangerous and of such little use that under the risk-utility analysis [the] manufacturer [should] bear the cost of liability to others.' " Smith v. Keller Ladder Co., 275 N.J.Super. 280, 283-84, 645 A.2d 1269 (App. Div.1994) (quoting O'Brien v. Muskin Corp., 94 N.J. at 184, 463 A.2d 298). However, a risk-utility analysis ordinarily involves "the consideration of other alternatives." O'Brien v. Muskin Corp., 94 N.J. at 184, 463 A.2d 298; see also Restatement (Third) of Torts, § 2(b) (1998). A plaintiff must generally prove that the product "could have been designed in an alternative manner so as to minimize or eliminate the risk of harm." Lewis v. American Cyanamid Co., 155 N.J. 544, 570, 715 A.2d 967 (1998). This burden includes the duty to prove under a risk-utility analysis "the existence of an alternative design that is both practical and feasible." Id. at 571, 715 A.2d 967; see also Macri v. Ames McDonough Co., 211 N.J.Super. 636, 641, 512 A.2d 548 (App.Div.1986); N.J.S.A. 2A:58C-3(a)(1) (instructing that a manufacturer may not be held liable "if ... [a]t the time the product left the control of the manufacturer there was not a practical and feasible alternative design" that would have prevented the harm).
The problem is somewhat more complicated where evidence is presented indicating either that the product was used for an improper purpose or was used in an improper manner. A manufacturer has a duty to make certain that its products are suitably safe when used for their intended or reasonably foreseeable purposes. Brown v. United States Stove Co., 98 N.J. 155, 165, 484 A.2d 1234 (1984) (citing Soler v. Castmaster, Div. of H.P.M. Corp., 98 N.J. 137, 144, 484 A.2d 1225 (1984); Suter v. San Angelo Foundry & Mach. Co., 81 N.J. at 169, 406 A.2d 140). In that context, "[a] manufacturer ... has a duty to prevent an injury caused by the foreseeable misuse of its product." Jurado v. Western Gear Works, 131 N.J. at 388, 619 A.2d 1312; see also Lewis v. American Cyanamid Co., 155 N.J. at 564, 715 A.2d 967.
Product misuse theoretically could relate to the existence of a defect, the issue of causation, or that of comparative fault. See James A. Henderson, Jr. and Aaron D. Twerski, Products Liability: Problems and Process 669 (2d ed.1992). If the jury concludes that a product is defective, it must determine whether the misuse proximately caused the injury. Even if a defect is a contributing or concurrent cause, and not the sole cause, of an accident, the manufacturer will be liable. Brown v. United States Stove Co., 98 N.J. at 171, 484 A.2d 1234.
More importantly in the context of the issues raised here, "[i]n some situations,... the issue of proximate cause is predetermined by the finding that the product is defective solely because of the manufacturer's failure to protect against a foreseeable misuse." Jurado v. Western Gear Works, 131 N.J. at 388, 619 A.2d 1312. If a design defect exists solely because the manufacturer has failed to include safety devices which would have prevented a foreseeable misuse of the product, it has been said that "there is no proximate cause question of any moment to consider." Aaron D. Twerski, The Many Faces of Misuse: An Inquiry Into the Emerging Doctrine of Comparative Causation, 29 Mercer L.Rev. 403, 421 (1978). In such a case, the question of proximate cause is subsumed in the finding of a product defect because "[t]he very reason for declaring the design defective was to prevent this kind of foreseeable misuse." Ibid. Proximate cause, in such a situation, could not present an obstacle to recovery on the ground of misuse, because "[t]o do so would negate the very reason for declaring the design defective in the first instance." Ibid.
Our Supreme Court explored this issue in Jurado v. Western Gear Works, 131 N.J. 375, 619 A.2d 1312. The plaintiff injured his hand when it became caught in an "in-running nip point" located between a rotating cylinder and a support bar underneath a collating machine. At trial, the plaintiff claimed that the product was defective because the absence of a guard on the in-running nip point. The defendant asserted that the collator was not designed to be adjusted while in operation and that the plaintiff had misused the product. The jury found in favor of the defendant. The Law Division granted the *987 plaintiff's motion for a judgment notwithstanding the verdict. We affirmed. 253 N.J.Super. 263, 601 A.2d 748 (App.Div. 1992). Our Supreme Court reversed and remanded the matter for a new trial on all issues, holding that the trial court's charge on misuse was confusing and resulted in inconsistent jury findings. 131 N.J. at 390, 619 A.2d 1312.
In the course of its opinion, the Court discussed the relationship between product defect and proximate cause where the plaintiff has misused the product. The Court observed that "[w]hen someone is injured while using a product for an unforeseeable purpose or in an unforeseeable manner, the misuse sheds no light on whether the product is defective, because a manufacturer is not under a duty to protect against unforeseeable misuses." Id. at 388, 619 A.2d 1312. In contrast, the Court stressed that a manufacturer owes the duty to "prevent an injury caused by the foreseeable misuse of its product." Ibid.
The Court noted, "[i]f the jury concludes that the product is defective, it must then determine whether the misuse proximately caused the injury." Ibid. Citing Professor Twerski, a nationally recognized expert in the field of products liability, the Court said that "[i]n some situations, ... the issue of proximate cause is predetermined by the finding that the product is defective solely because of the manufacturer's failure to protect against a foreseeable misuse." Ibid. (citing Aaron D. Twerski, The Many Faces of Misuse: An Inquiry Into the Emerging Doctrine of Comparative Causation, 29 Mercer L.Rev. at 421). In returning the matter to the Law Division for retrial, the Court instructed that "if ... the jury determines that plaintiff's misuse was objectively foreseeable, that determination will predetermine that the product was the proximate cause of the accident." Id. at 390, 619 A.2d 1312. "If so, the trial court should instruct the jury that its determination of the existence of a defect will have that further effect." Ibid.
In support of the Law Division's order for a new trial, plaintiff heavily relies upon the Supreme Court's opinion in Jurado. Plaintiff emphasizes that her alleged misuse of the seat belt system was foreseeable, and that Nissan's failure to protect against the attendant risk caused by that misuse was a product defect that proximately caused the injuries sustained. Implicit in her argument is that the misuse could not be considered an independent, intervening cause sufficient to preclude a finding of proximate cause. See Rappaport v. Nichols, 31 N.J. 188, 203, 156 A.2d 1 (1959); Menth v. Breeze Corp., 4 N.J. 428, 442, 73 A.2d 183 (1950); Showalter v. Barilari, Inc., 312 N.J.Super. 494, 503, 712 A.2d 244 (App.Div.1998); Yun v. Ford Motor Co., 276 N.J.Super. 142, 647 A.2d 841 (App. Div.1994) (Baime, J., concurring and dissenting), rev'd on dissent, 143 N.J. 162, 669 A.2d 1378 (1996); Bandel v. Friedrich, 235 N.J.Super. 384, 390, 562 A.2d 813 (App.Div. 1989), aff'd, 122 N.J. 235, 584 A.2d 800 (1991).
We note, however, that the issue presented here is slightly different than that presented in Jurado. The facts of Jurado were simple. By adding a safety guard, the manufacturer could easily have prevented the very misuse that caused the plaintiff's injury. In contrast, the alternative safer design proposed by plaintiff's experts in this case, a retractable three point shoulder harness lap belt restraint system, would not have prevented plaintiff's misuse of the product. Only a straight-jacket harness system tying the occupant's torso and pelvic region to the seat would prevent the passenger from reclining to the left or right, and of course no one suggested that this would serve as an appropriate alternative design. Plaintiff's experts testified that their recommended three point combination seat belt system would not have prevented plaintiff from tilting to one side or the other, but instead would have prevented the enhanced injuries resulting from the occupant positioning herself in a reclining horizontal position.
Where, as in Jurado, addition of a safety guard would indisputably prevent the foreseeable misuse that causes a plaintiff's injuries, the finding of a product defect predetermines the question of proximate cause. But where, as here, there is a dispute whether or not the alternative safer design would have prevented the plaintiff's enhanced injuries *988 caused by her reasonably foreseeable misuse of the product, the problem is more complicated.
In this case, for example, the jury could reasonably have found on the evidence presented that the three point restraint system recommended by plaintiff's experts was an alternative, feasibly safer design than the two point lap system utilized by Nissan, but that it would not have prevented plaintiff's injuries because of her misuse of the system. Depending upon the wording of the instructions, a jury's finding of product defect would be consistent with its finding that the defect was not a proximate cause of the plaintiff's injuries. The language used by the trial court in this case, however, invited inconsistent findings. In defining product defect, the trial court instructed the jury that plaintiff bore the burden of proving the availability of "an alternative safer design ... which would have eliminated the alleged defect in the internal restraint system and [would have] prevent[ed] [plaintiff] from being injured to the extent she was." By finding a product defect, it is at least arguable that the jury implicitly determined, in accordance with the trial court's instructions, that the three point combination restraint system recommended by plaintiff's experts would have prevented the enhanced injuries suffered by plaintiff, and thus Nissan's two point lap belt system was defective. However, the trial court's instructions on proximate cause emphasized that if the jury were to conclude "plaintiff would have been injured ... as she was, even if the vehicle had been designed differently, then Nissan would be entitled to a verdict, because the alleged defect could not have been a substantial factor in causing her injuries." Thus, the jury's finding that the product defect was not the proximate cause of plaintiff's injuries, if based upon this instruction, must be considered as inconsistent with its finding that a product defect existed.
The jury's inconsistent verdict could have been prevented by an unambiguous instruction. Specifically, the jury could have been instructed that if it found a product defect because a safer alternative design was available which would have prevented plaintiff's injuries despite the foreseeable misuse of the product, then its determination of the existence of a product defect would predetermine that the defect was the proximate cause of plaintiff's injuries and that plaintiff's reasonably foreseeable misuse of the product could not be considered an intervening cause sufficient to defeat her claim. Jurado v. Western Gear Works, 131 N.J. at 390, 619 A.2d 1312.
We note that the problem with the jury instructions given in this case is not peculiar to cases dealing with misuse. The difficulty arises in all cases in which a plaintiff claims that an alternative design would have prevented the injuries sustained and the defendant disputes that claim. In any case where the judge instructs the jury that a product is defective if a safer alternative design would have prevented the injuries sustained, the issue of proximate cause may to some extent be predetermined. The first instruction is tantamount to asking two separate questions: (1) whether a safer alternative design existed, i.e., product defect, and (2) whether that design would have prevented the injuries sustained, i.e., proximate causation. Thus, the additional question of proximate cause is unnecessary and invites an inconsistent jury verdict.
We said previously that the trial court's instructions on product defect and proximate cause invited inconsistent findings. Because the questions submitted were not specific, we do not know how the jury arrived at its verdict. However, there is reason to believe that the trial court's instructions infected the fairness of the proceedings. The error committed undermines our confidence in the jury's verdict. "[O]ur colleagues at the trial bench sometimes grumble that while trial judges devote their energies to the pursuit of justice, appellate judges spend their time hunched over the record, pawing through it in an unrelenting search for error." Id. at
391, 619 A.2d 1312 (Clifford, J., dissenting). But that dyspeptic observation has no applicability here. Although the trial judge was less than precise in articulating his reasons for ordering a new trial, he obviously shared our discomfort with the manner in which the questions of product defect and proximate cause were dealt with in his jury instructions. We sustain the order because *989 the trial court failed to instruct the jury that a finding of product defect would predetermine the question of proximate cause, and because the jury's verdict was inconsistent.

III.
We find no merit in the arguments plaintiff advances in her cross-appeal. R. 2:11-3(e)(1)(E). Consistent with the trial court's order, the matter must be retried as to all issues. See Conklin v. Hannoch Weisman, 145 N.J. 395, 402-04, 678 A.2d 1060 (1996); Ahn v. Kim, 145 N.J. 423, 434, 678 A.2d 1073 (1996). At the retrial, evidence of plaintiff's intoxication may be admitted both to prove that she was in a "slumped" position at the time of impact and to show that she would not have heeded warnings pertaining to the dangers posed by the seatbelt system had they been given.
Affirmed.