John P. COLLINS, Plaintiff-Appellant,

v.

**AMERICAN OPTOMETRIC ASSOCIATION,**
**Defendant-Appellee.**

No. 81–2802.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1982.
Decided Nov. 10, 1982.

Howard S. Young, Jr., Young & Young, Indianapolis, Ind., for plaintiff-appellant.

Edwin E. Huddleson, III, Washington, D.C., for defendant-appellee.

Before CUMMINGS, Chief Judge, GIBSON,[*] Senior Circuit Judge, and CUDAHY, Circuit Judge.

CUDAHY, Circuit Judge.

This diversity appeal involves a claim that the American Optometric Association ("AOA") negligently disseminated misleading information concerning the qualifications of optometrists, as a group, to detect eye diseases such as glaucoma. The district court granted summary judgment in favor of AOA on the ground that the plaintiff had failed, as a matter of law, to demonstrate misrepresentation. For the reasons stated below, we affirm the judgment of the district court.

I.

In January 1977, plaintiff, John Collins, began experiencing difficulty with his vision. Between January and October of that year, Collins visited at least four separate optometrists at different times. None of these optometrists diagnosed Collins as having glaucoma, although Collins at that time apparently did have an advanced and progressing condition of glaucoma, which was subject to diagnosis. In December 1977, plaintiff first sought the assistance of an ophthalmologist [1]—Dr. Wilbert Washington—for his eye problems. After an examination, Dr. Washington informed Collins

---

[*] The Honorable Floyd R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit is sitting by designation.

1. An ophthalmologist is a medical doctor specializing in ailments, impairments and diseases of the eye. Optometrists, who are not medical doctors, are separately licensed.

that he had an advanced case of glaucoma and was losing his vision.

On May 17, 1979, Collins filed suit against three of the individual optometrists he had visited and against the AOA. In his Amended Complaint, Collins alleged that each of the individual defendants "negligently failed to diagnose or detect or treat plaintiff's condition of glaucoma," and that the AOA, in order to induce members of the public to seek the services of optometrists, negligently misrepresented to the public "that optometrists were educated and qualified to detect glaucoma and to give the best vision care possible." Specifically, with respect to AOA, paragraph 9 of plaintiff's Amended Complaint alleged:

> In order to induce members of the public to seek the services of optometrists, including the defendant optometrists, the defendant, American Optometric Association, negligently advertised, informed and represented to the public, including the plaintiff, that optometrists were educated and qualified to detect and diagnose glaucoma and to give the best vision care possible. It also represented that optometrists were capable of giving preventive care, when in fact some members of its association were not so qualified.

Plaintiff further alleged that the negligence of the defendants, including AOA, "caused the condition of glaucoma of the plaintiff's eyes to progress from a nonimpairing, controllable condition to that of a disabling, irreversible near blindness." Amended Complaint ¶ 10.

The parties conducted extensive discovery in the court below, which included the taking of depositions of the plaintiff and the three defendant optometrists. In addition, AOA produced for Collins' inspection the various informational pamphlets distributed by AOA to its members or to the public, usually upon request, from 1970 to the present. In all, AOA produced 73 pamphlets dealing with various facets of eye care and health. Despite this production, Collins was unable to identify any particular pamphlet, publication, article or advertisement upon which he relied in seeking optometric care. Nor was Collins able to establish or confirm that any representations he claimed to have seen were attributable to or published by AOA.

AOA filed a motion for summary judgment and/or dismissal on February 2, 1980, alleging, inter alia, that "traditional principles of tort law" precluded a finding of liability on the part of AOA. The trial court held, as a matter of law, that AOA's representations were neither false nor misleading and, thus, granted AOA's motion for summary judgment. Collins filed an initial notice of appeal on June 22, 1981; this appeal was later voluntarily withdrawn on the ground that it was probably premature in that it challenged a grant of summary judgment entered in favor of only one of multiple defendants. Following the withdrawal of this appeal, Collins executed Covenants Not to Sue with the three individual optometrists named in the Complaint and, on October 28, 1981, the district court dismissed Collins' action, without prejudice, as to these three defendants. The instant appeal, in which AOA is the sole defendant-appellee, followed.

## II.

On appeal, plaintiff argues that the district court erred in granting AOA's motion for summary judgment because material issues of fact existed both as to the truthfulness of AOA's representations and as to plaintiff's reliance on those representations in seeking optometric care. With regard to truthfulness, plaintiff alleges that AOA inaccurately and misleadingly represented "that optometrists as a class had the training, ability, and capability of diagnosing or detecting all eye diseases including glaucoma" and "that as a class, optometrists are competent, qualified, professional, careful, specialized and to whom the public can go with confidence that they are the major eye health care providers anywhere." Appellant's Br. at 10. With regard to reliance, or proximate cause, plaintiff claims that he "testified in his deposition that he had read the American Optometric Association literature and advertisements, and as a result, he

felt that optometrists would take care of all of his eye care needs." *Id.* at 20. These allegations, plaintiff argues, entitle him to a jury trial on the issue of AOA's liability for damages under theories of misrepresentation, negligence, and/or constructive fraud.

Defendant, by contrast, argues that the district court correctly determined, as a matter of law, that AOA's representations were not misleading because the Optometry Code of Indiana "establish[es], as a matter of law, that optometrists are educated, licensed and qualified to detect (but not treat) signs of eye diseases such as glaucoma." Dist.Ct. Opinion at 4.[2] In addition, defendant argues that the district court's grant of summary judgment in favor of AOA "is independently supported on the ground that Collins can show no reliance on AOA statements (no proximate causation)." Appellee's Br. at 1.

■ It is well established that summary judgment is appropriate only when "there is no genuine issue as to any material fact," Fed.R.Civ.P. 56(c); *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), and that, in determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Fitzsimmons v. Best,* 528 F.2d 692, 694 (7th Cir.1976). It is equally well settled, however, that where no factual disputes are present, *or* where the *undisputed facts* demonstrate that one party

is entitled to judgment as a matter of law, summary judgment in favor of that party is entirely appropriate. *See, e.g., Products Liability Insurance Agency, Inc. v. Crum & Foster Insurance Companies,* 682 F.2d 660 at 663 (7th Cir.1982). *Kirk v. Home Indemnity Co.,* 431 F.2d 554, 559–60 (7th Cir.1970). In the case before us, the undisputed facts demonstrate that the representations made by the AOA, regardless of their accuracy, were not the proximate cause of plaintiff's injuries. The district court's grant of summary judgment in favor of AOA must therefore be upheld.[3]

### III.

■ A plaintiff seeking damages for fraudulent misrepresentation must demonstrate both that there has been a material misrepresentation as to a past or present fact, and that he has acted to his detriment in reliance on that misrepresentation. *St. Joseph Bank & Trust Co. v. Sun Insurance Co.,* 380 F.Supp. 890, 892 (N.D.Ind.1974); *Grissom v. Moran,* 154 Ind.App. 419, 432, 290 N.E.2d 119, 123–24 (1973). Similarly, to establish a prima facie case of negligence, a plaintiff must show that the defendant owed a duty to the plaintiff, that the defendant's conduct failed to fulfill that duty, and that the plaintiff sustained an injury as a result of that failure. *Palace Bar, Inc. v. Fearnot,* 269 Ind. 405, 381 N.E.2d 858, 861 (1978). In order to meet this burden, the plaintiff's evidence must establish that the alleged wrongful act was a proximate cause of the occurrence complained of and that the occurrence was a proximate cause of plaintiff's injury. *Id.; St. Joseph Bank &*

---

**2.** The Optometry Code of Indiana (Indiana Code § 25–24–1–1 *et seq.*) provides in pertinent part as follows:

§ 25–24–1–4. *"Practice of optometry" defined.*

The practice of optometry is hereby defined to be any one of the following acts, or any combination of, or part of the following acts:

(a) Diagnosis. The examination or diagnosis of the human eye, to ascertain the presence of abnormal conditions or functions which may be diagnosed, corrected, remedied or relieved, or the application or prescription of lenses, prisms, exercises, or any physical,

mechanical, physiological or psychological therapy, or the employment of any means, for the purpose of detecting any diseased or pathological condition of the eye, or the effects of any diseased or pathological condition of the eye, which may have any significance in a complete optometric diagnosis of the eye or its associated structures.

**3.** Because we hold that the alleged misrepresentations were not the legal cause of plaintiff's injuries, we need not decide whether the AOA statements were truthful or accurate as a matter of law. We therefore express no opinion on the district court's resolution of this issue.

*Trust Co. v. Sun Insurance Co.,* 380 F.Supp. 890, 892 (N.D.Ind.1974).

■ Proximate cause has been defined by the Indiana courts as

that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred.

*Johnson v. Bender,* 174 Ind.App. 638, 369 N.E.2d 936, 939 (1977); *Honey Creek Corp. v. WNC Development Co.,* 165 Ind.App. 141, 331 N.E.2d 452, 456 (1975). Implicit in this definition is the notion of causation in fact, or "but ... for" cause: a defendant's conduct is not the legal cause of an event unless, without that conduct, the event would not have occurred. *Hayes Freight Lines Inc. v. Wilson,* 226 Ind. 1, 77 N.E.2d 580, 583 (1948). *See Honey Creek Corp. v. WNC Development Co., supra,* 331 N.E.2d at 457–58 (1975); W. Prosser, THE LAW OF TORTS 238–39 (4th ed.1971).[4]

■ On the issue of causation, as on other issues essential to his cause of action, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the defendant's conduct was a substantial factor in bringing about the injury complained of. *See Letson v. Lowmaster,* 168 Ind.App. 159, 341 N.E.2d 785, 787–88 (1976); *Halkias v. Gary National Bank,* 142 Ind.App. 329, 234 N.E.2d 652, 655 (1968). *See generally* W. Prosser, THE LAW OF TORTS § 41 (4th ed.1971). Although causation is normally a matter for the jury, *Ortho Pharmaceutical Corp. v. Chapman,* Ind.App., 388 N.E.2d 541, 555 (1979), where the evidence permits only one reasonable conclusion on the ques-

tion of proximate cause, the trial court is justified in removing the issue from the jury, and rendering judgment as a matter of law. *Peck v. Ford Motor Co.,* 603 F.2d 1240, 1243 (7th Cir.1979); *Fruehauf Trailer Div. v. Thornton,* 174 Ind.App. 1, 366 N.E.2d 21, 25 (1977). Moreover, both the courts of Indiana, and this circuit in interpreting Indiana law, have held that a jury's determination of proximate cause must be based upon provable facts "and cannot be based upon mere guess, conjecture, surmise, possibility or speculation." *Halkias v. Gary National Bank,* 142 Ind.App. 329, 234 N.E.2d 652, 655 (1968). *See Foster v. New York Central System,* 402 F.2d 312 (7th Cir.1968). As Dean Prosser has stated

A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the possibilities are at best evenly balanced it becomes the duty of the court to direct a verdict for the defendant.

W. Prosser, THE LAW OF TORTS 241 (4th ed.1971).

■ In applying these principles, the courts in Indiana have consistently refused to impose liability where a plaintiff fails to produce sufficient evidence to support a finding of "but ... for" cause. For example, in *St. Joseph Bank & Trust Co. v. Sun Insurance Co.,* 380 F.Supp. 890 (N.D.Ind. 1974), a bank whose money had been stolen from an armored car sued the armored car's insurer to recover the funds. Although the insurance policy concededly did not cover the loss in question, the bank alleged that the insurance company was nonetheless liable because it had either fraudulently or negligently misinformed the plaintiff as to the scope of the armored car's insurance coverage. The court granted summary

---

**4.** To take care of the situation where two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical event, several courts have adopted a somewhat broader definition of causation in fact, which provides that the defendant's conduct is a cause of an event if it was a material element and a substantial factor in bringing the event about. *See, e.g., Dunham v. Canisteo,* 303 N.Y. 498, 104 N.E.2d 872 (1952); *Anderson v. Minneapolis, St. P. &*

*S.S.M.R. Co.,* 146 Minn. 430, 179 N.W. 45 (1920); RESTATEMENT (SECOND) OF TORTS §§ 431–33 (1966).

Except for the concurrent cause situation mentioned above, however, it is difficult to imagine a situation in which the defendant's conduct could be characterized as a "substantial factor" in bringing about an event, yet the event would have occurred even absent the challenged conduct. *See generally* W. Prosser, THE LAW OF TORTS § 41 (4th ed.1971).

judgment in favor of the insurance company holding, inter alia, that the plaintiff's own testimony established "that the alleged misstatement did not induce the plaintiff to continue to use Indiana Armored Service, Inc. and thereby cause plaintiff's loss." 380 F.Supp. at 894. Similarly, in *Letson v. Lowmaster,* 168 Ind.App. 159, 341 N.E.2d 785 (1976), the Indiana appellate court affirmed a grant of summary judgment in favor of a defendant campground owner, holding that even if a jury might have found that the owner was negligent in maintaining her campground, the plaintiff had presented no "evidence of probative value" that the defendant's negligence proximately caused the injury complained of. 341 N.E.2d at 787–88. And in *Palace Bar, Inc. v. Fearnot,* 269 Ind. 405, 381 N.E.2d 858 (1978), the Indiana Supreme Court reversed a jury verdict in favor of the plaintiff in a wrongful death action, holding that even had defendants been negligent in allowing the decedent to fall onto a stair landing, such negligence could not have been the proximate cause of his death, since the only medical evidence available indicated that he died from natural causes unrelated to defendants' conduct.

In sum, the total evidence is that the decedent died from natural causes and not because of any acts of defendants regardless of whether or not they may have been negligent. Since there is no probative evidence that the fall occasioned the heart attack, the jury could not properly draw any inference that such was the case. As we have already stated, an inference must be drawn from a fact. Under these circumstances, to allow the jury to deliberate on the issue of cause of death was to allow them to speculate as to possibilities and nothing more.

381 N.E.2d at 865.

We believe that these precedents, and the principles they embody, preclude a finding of liability in the instant case. Plaintiff here has consistently failed to specify which AOA documents or publications he allegedly relied upon in seeking optical care. Moreover, he has failed to establish that the alleged misrepresentations of which he complains are attributable to AOA sources as opposed to materials disseminated by other groups. As the materials submitted in support of defendant's motion for summary judgment indicate, many groups and individuals besides AOA publish information regarding optometry and optometrists. *See* Averill Dep. at 41; Malmer Dep. at 51–52. Indeed, in this regard, it is noteworthy that plaintiff can point to no document in AOA's public information file for the period 1970 through 1977 which states that optometrists are educated and qualified "to give the best vision care possible," despite the fact that this was one of the alleged misrepresentations set forth in paragraph 9 of the Complaint. Nor can Collins point to any AOA statements representing that optometrists can "cure any medical problems" (Collins Dep. at 53, 137), "treat any medical conditions" (Collins Dep. at 110), or "treat glaucoma" (Collins Dep. at 111). Under these circumstances, we cannot conclude that Collins has presented sufficient evidence from which a jury could reasonably infer that his injury would not have occurred but for the conduct of the AOA. *See Hayes Freight Lines, Inc. v. Wilson,* 226 Ind. 1, 77 N.E.2d 580 (1948); *Letson v. Lowmaster, supra,* 341 N.E.2d at 787–88.

Perhaps even more important, plaintiff's own testimony establishes that he did not rely on any of defendant's alleged misrepresentations in seeking out any of the optometrists who failed to diagnose his glaucoma. Collins testified during his deposition that he originally sought the services of Union Optical in 1964, because he was referred there by his employer or union representative, and because he was given a card at work which described the eye care services performed there. Collins Dep. at 104–09. Similarly, plaintiff stated that he visited Dr. John Long in San Diego, in 1976, because Collins was new in the San Diego area and had read Dr. Long's name on a shopping center directory. *Id.* at 116. When plaintiff's eye problems persisted, he then sought the services of Dr. Kenneth Van Arsdall in Columbus, Indiana, in May

1977, after seeing Van Arsdall's sign while driving to work, and hearing from plaintiff's housekeeper that Dr. Van Arsdall "was a good doctor." *Id.* at 41, 118–19. Still unsatisfied and undiagnosed, plaintiff visited a local Columbus optician's office in October 1977 and asked where he could find another "eye doctor," at which time he was referred to Dr. Monte Sparks, whose office was located "right across the street; not too far away." *Id.* at 121–22. Finally, plaintiff testified that shortly after his appointment with Dr. Sparks, he sought the services of yet another optometrist, Dr. Michael Irons, on the recommendation of his neighbors, the Jerrys. *Id.* at 52–53, 127. At no point in his deposition did Collins indicate that·he relied specifically on any AOA pamphlet or publication in selecting any of the optometrists he visited between 1964 and October of 1977. This testimony, like the medical evidence presented in *Palace Bar, Inc. v. Fearnot, supra,* establishes, as a matter of law, that defendant's statements, even if negligent, were not the proximate cause of plaintiff's injury; they were not "a cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the result complained of and without which the injury would not have occurred." *Johnson v. Bender, supra,* 369 N.E.2d at 939.[5]

### IV.

For the foregoing reasons, the district court's grant of summary judgment, in favor of defendant-appellant AOA, is

AFFIRMED.

---

5. As the preceding analysis implies, our resolution of the instant case might well be different if the plaintiff had been able to show that he relied specifically on any AOA representations in selecting or seeking the assistance of any of the optometrists he visited.