211 N.J. Super. 636 (1986)
512 A.2d 548
ANTHONY J. MACRI, PLAINTIFF-APPELLANT,
v.
AMES MCDONOUGH COMPANY, COOPER INDUSTRIES AND PLUMB MANUFACTURING COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 9, 1986.
Decided July 8, 1986.
*637 Before Judges FURMAN, COHEN and SKILLMAN.
Gerard E. Hanlon argued the cause for appellant.
Carroll A. Morley argued the cause for respondents (Morley, Cramer, Tansey, Haggerty & Fanning, attorneys).
The opinion of the court was delivered by SKILLMAN, J.S.C. (temporarily assigned).
This is a products liability personal injury case. The accident happened while plaintiff was assisting his father in cutting down a tree stump. A steel hammer manufactured by defendant McDonough Company (improperly named in the complaint as Ames-McDonough Company) was being used to hit the head of a chisel driven into the stump. Plaintiff's father was using the hammer and plaintiff was standing five to six feet away. When the hammer hit the head of the chisel the hammer chipped and a fragment of metal penetrated plaintiff's abdomen.
*638 Plaintiff attempted to proceed on two theories of liability. First, he contended that the hammer was defectively designed because the material used in the head is brittle and hence has a propensity to chip. Second, he contended that the warnings on the hammer are inadequate.
Defendants successfully moved before trial to preclude plaintiff's expert on the warnings claim from testifying because his report had not been produced in a timely manner pursuant to a case management order of the trial court. During argument on that motion, the trial court repeatedly expressed the view that expert testimony is required in order to proceed on an inadequate warnings claim. At the bottom of the order of April 23, 1985, which precluded plaintiff's expert on the warnings claim from testifying, was the trial court's handwritten note which stated: "Reference to the label on the hammer will be limited to the issue as to whether it was being used in a reasonably foreseeable manner."
At the close of all the evidence, the trial court granted defendants' motion for an involuntary dismissal, concluding that plaintiff had failed to present any evidence of a design defect in the hammer. Although the trial court did not discuss plaintiff's inadequate warnings claim at that time, it is undisputed that the court intended to dismiss that claim as well.[1]
On appeal, plaintiff raises three arguments: (1) the defect in the design of the hammer is self-evident and hence the trial court not only erred in involuntarily dismissing plaintiff's claim but should also have directed judgment in plaintiff's favor; (2) the inadequacy of the warnings on the hammer can be established without expert testimony, and (3) if expert testimony is required on the warnings claim, the trial court abused its *639 discretion in precluding the testimony of plaintiff's warnings expert.
We conclude that the trial court properly determined that plaintiff failed to present any evidence of a design defect in the hammer and therefore affirm the dismissal of that claim. However, we also conclude that plaintiff's claim that the warnings on the hammer are inadequate does not require supporting expert testimony and therefore should not have been dismissed. Accordingly, the case is remanded for a new trial on the warnings claim only. Our reversal on this basis makes it unnecessary to determine whether the trial court abused its discretion in precluding plaintiff's warnings expert from testifying, because the trial court's order of April 23, 1985 will not be controlling at the retrial and defendants will now presumably have adequate time to submit expert testimony addressed to this claim. See O'Connor v. Abraham Altus, 67 N.J. 106, 130 (1975).

I.
When it is claimed that a product has been defectively designed, the court ordinarily must apply a "risk-utility analysis to determine whether the utility of the product outweighs its risk of harm." Johnson v. Salem Corp., 97 N.J. 78, 88 (1984). If "there is a fact question whether the risks outweigh the utility of the product, then the matter is for the trier of fact." O'Brien v. Muskin Corp., 94 N.J. 169, 186 (1983). On the other hand, "[i]f the minds of reasonable men could not differ on whether the risks posed by a product outweigh its utility, or vice versa, then the court could make the appropriate determination as a matter of law." Id.
The trial court concluded that no evidence was presented at trial from which a jury could conclude that the risks posed by the hammer outweigh its utility and hence that it is defective:
There is nothing before this jury that would indicate that the risk outweighs the utility. The only proofs before this jury are completely to the contrary and reasonable people could not differ, that a hammer is an extremely utilitarian *640 product as I pointed out in colloquy. It's hard to imagine this building being constructed without a hammer. It's difficult to imagine any structure being constructed without a hammer of some kind. So that reasonable people cannot differ as to the utilitarian aspects.
And generally, as I already indicated, we get into the risk utility. You generally have a substitute that would make the product safer, in this case I have none. So that there is really nothing to take this to the jury on the risk utility theory as far as strict liability in tort is concerned.
On appeal plaintiff does not directly attack the risk-utility analysis of the trial court by, for example, pointing to expert testimony from which the jury might have concluded that the risks of the hammer outweigh its utility. Rather, plaintiff's argument is that the defect in the hammer is self-evident and that the trial court therefore erred in applying a risk-utility analysis to determine whether the case should be submitted to the jury. Plaintiff relies upon the part of the opinion in Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150 (1979) where the Court stated:
In some improper design situations the nature of the proof will be the same as in other unintended defect cases. This occurs when it is self-evident that the product is not reasonably suitable and safe and fails to perform, contrary to the user's reasonable expectation that it would "safely do the jobs for which it was built." Greenman v. Yuba Products, Inc., supra, 59 Cal.2d [57] at 64, 27 Cal. Rptr. [697] at 701, 377 P.2d [897] at 901 [(1962)]. Thus, if one purchased a bicycle whose brakes did not hold because of an improper design, the manufacturer's responsibility would be clear without more. [81 N.J. at 170-171].
We are satisfied that the hammer does not contain a self-evident defect. The evidence established that the hammer poses a danger of chipping when it strikes another object of comparable hardness. However, there are a wide variety of products which pose certain risks but also serve useful purposes and hence may not be said to be defective in design. See, e.g., Feldman v. Lederle Laboratories, 97 N.J. 429, 444-447 (1984). Indeed, this is the very reason a risk-utility analysis is generally required before a determination can be made whether a product has been defectively designed. O'Brien v. Muskin Corp., supra, 94 N.J. at 183-184; Cepeda v. Cumberland Engineering Co., 76 N.J. 152, 170-180 (1978). A hammer which poses some risk of chipping is readily distinguishable *641 from the Suter court's example of a bicycle whose brakes do not hold. Therefore, we are satisfied that the theory of self-evident defect has no applicability in the present context.
In addition, while it is not directly challenged on appeal, we note our agreement with the trial court's conclusion that there was no evidence presented from which the jury could have concluded that the risks posed by the hammer outweigh its utility. Plaintiff's expert testified that defendant McDonough's hammer, like all other hammers on the market, is susceptible to chipping. He also said that research could be conducted which might result in the development of a hammer which would avoid this risk through the use of a different material. However, he did not say that such a hammer had been developed when the hammer which caused plaintiff's injury was marketed in 1975 or even that it could have been developed in view of then existing technological knowledge. Since plaintiff failed to present evidence that there was a safe and reasonably feasible alternative to defendants' product, the trial court properly concluded that there was no issue of design defect for the jury to determine.

II.
It was undisputed at trial that defendants' hammer poses a danger of chipping when it strikes another hard surface. However, the only evidence presented of any warnings of the dangers posed by the hammer was that there is embossed on the grip of the hammer the words, "WARNING, BE SAFE, CUSHION GRIP, WEAR SAFETY GLASSES."[2] Although the *642 trial court recognized the existence of an issue as to the adequacy of this warning, it concluded that O'Brien v. Muskin Corp., supra, required supporting expert testimony in order to proceed on this claim. Since the court precluded plaintiff's warnings expert from testifying, it dismissed the plaintiff's warnings claim. We conclude that the trial court's disposition of plaintiff's inadequate warnings claim reflects a basic misconception of the need for expert testimony to support such a claim and therefore requires reversal.
It is now firmly established that a product may be unsafe and hence defective because of inadequate warnings of the dangers it poses. Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 205-208 (1984); Feldman v. Lederle Laboratories, supra, 97 N.J. at 449-458; Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 236-243 (1981). The objective of warnings is that "the risk from the product be reduced to the greatest extent possible without hindering its utility." Beshada v. Johns Manville Products Corp., 90 N.J. 191, 201 (1982). Accordingly, "an adequate warning is one that includes the directions, communications, and information essential to make the use of a product safe." Freund v. Cellofilm Properties, Inc., supra, 87 N.J. at 243.
Expert testimony is only required to support a claim when the subject matter is so esoteric that jurors of common judgment and experience are unable to make a determination without the benefit of the information and opinions possessed by a person with specialized knowledge. Butler v. Acme Markets Inc., 89 N.J. 270, 282-284 (1982); Klimko v. Rose, 84 N.J. 496, 502-506 (1980); Black v. Public Service Elec. & Gas Co., 56 N.J. 63, 77-79 (1970). Even in establishing the standard of care in a medical malpractice case expert testimony is not invariably required: "The facts of a given case may be such that the common knowledge and experience possessed by laymen may enable a jury to conclude, without expert testimony, in a malpractice action as in any other negligence action that a *643 duty of care has been breached." Klimko v. Rose, supra, 84 N.J. at 503-504. Likewise, where a plaintiff alleges that there is a defect in a product, he is "not necessarily confined to the explanation his expert may advance." Sabloff v. Yamaha Motor Co., Ltd., 59 N.J. 365, 366 (1971). See also Suter v. San Angelo Foundry & Machine Co., supra, 81 N.J. at 170-171; Moraca v. Ford Motor Co., 66 N.J. 454, 458-460 (1975). And in Ventura v. Ford Motor Corp., 180 N.J. Super. 45, 53 (App.Div. 1981), we held that "inferences from the evidence," without supporting expert proof, could support a conclusion that a defective mechanism for which the auto manufacturer was responsible caused plaintiff's engine to hesitate and stall.
We see no reason why a products liability claim based on alleged lack of warnings or inadequate warnings should be treated differently from any other category of case in determining whether there is a need for expert testimony. As in any other case where a party seeks to proceed without expert testimony, the trial court should determine, based on all the evidence presented, whether the knowledge and experience of the jurors, unaided by expert testimony, provides a sufficient basis to determine the factual issue, in this case the need for or adequacy of warnings. We add that O'Brien v. Muskin Corp., supra, which the trial court read to require expert testimony in any strict liability warnings case, simply does not deal with this issue. On the other hand, while it was dealing with a negligence rather than a strict liability case, the Court in Black v. Public Service Elec. & Gas Co., supra, squarely held that the need for warnings of a recognized danger may be determined by a jury without expert testimony. 56 N.J. at 78-79.
In this case there was expert testimony concerning the danger of the hammer chipping. In our view this was the only element of plaintiff's inadequate warnings claim which required supporting expert testimony. Once this danger was established, it was within the competence of the jury, unaided by expert testimony, to determine the need for warnings and the adequacy of the warnings placed on the hammer by the manufacturer. *644 A hammer is a commonly used consumer product and chipping is an easily understood danger. Therefore, while expert testimony could have been of assistance, it was not a prerequisite for the submission of plaintiff's inadequate warnings claim to the jury.[3]

III.
Accordingly, we affirm the dismissal of plaintiff's design defect claim but reverse and remand for a new trial on the inadequate warnings claim.
NOTES
[1] It is unclear from the trial record whether the trial court considered the warnings claim to have been dismissed by its order of April 23, 1985, or whether it assumed that its comments during argument on defendants' motion to dismiss at the close of plaintiff's case were sufficient to dispose of that claim without further comment at the close of all evidence.
[2] In answers to interrogatories defendant asserted that at the time of retail sale of the hammer a warning label was also affixed to the neck of the hammer, which said: "Use this hammer to drive and pull common nails only. Hammer face may chip if struck against another similar tool, hardened nails or other hard objects, possibly resulting in eye or other bodily injury." However, plaintiff's father, the purchaser of the hammer, denied having seen such a label on the hammer, and defendants failed to present evidence of the label at trial.
[3] Defendant argues, as an alternative grounds for affirmance, that plaintiff failed to establish the absence of warnings when the hammer left its control. We refuse to consider this point because it was not raised below and hence not ruled upon by the trial court. See Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973). In any event, plaintiff presented the testimony of his father as to the warnings on the hammer when purchased from the retailer and under the facts of this case the jury could have inferred that the same warnings were on the hammer when it was distributed by the manufacturer. Cf. Corbin v. Camden Coca-Cola Bottling Co., 60 N.J. 425, 433-435 (1972). Furthermore, the presence on the hammer of warnings which could be removed by the retailer might provide a separate basis for the imposition of liability upon the manufacturer. Cf. Cepeda v. Cumberland Engineering Co., Inc., 76 N.J. 152, 180-182 (1978).