**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1322-18T2

STEPHEN SCHWEIGER,

     Plaintiff-Appellant,

v.

STANDARD TILE SUPPLY,
CO. and LATICRETE
INTERNATIONAL, INC.,

     Defendants-Respondents.

_____

> Argued October 8, 2019 – Decided November 6, 2019
>
> Before Judges Yannotti and Firko.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. DC-013173-17.
>
> Stephen Schweiger, appellant, argued the cause pro se.
>
> Kevin A. Lee argued the cause for respondent Standard Tile Supply Co. (Law Office of Abe Rappaport, attorneys; Kevin A. Lee, on the brief).
>
> Eric S. Schlesinger argued the cause for respondent Laticrete International, Inc. (Golden Rothschild

Spagnola Lundell Boylan Garubo & Bell, PC, attorneys; Punita K. Amin, on the brief).

PER CURIAM

In this product liability action, plaintiff Stephen Schweiger alleges he purchased defective, ready-to-use, pre-mixed plasma grout from defendant, Standard Tile Supply Company (Standard Tile) that was manufactured by defendant, Laticrete International, Inc. (Laticrete). He appeals from the October 9, 2018 order granting summary judgment to Standard Tile and Laticrete and dismissing with prejudice his complaint, because he failed to provide an expert report.

Plaintiff argues that no expert opinion was required to sustain his design and manufacturing defect claims. We disagree and affirm.

I.

We take the facts from the summary judgment record, viewing them in the light most favorable to plaintiff. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016); R. 4:46-2(c). In February 2016, plaintiff purchased the plasma grout from Standard Tile, along with tile. He intended to grout and tile three bathrooms, including showers, a laundry room, and a mudroom in his home. Tom Weber of Weber Custom Tile Installation, a professional with thirty years of experience in the tile industry, installed the tile in plaintiff's home using the

2

plasma grout. After about two weeks, the grout began to disintegrate and dissolve between the tiles in each room.

On December 1, 2017, plaintiff filed a complaint in the Special Civil Part alleging that, due to the product being "defective," the grout began to "wash away" requiring repair of the damage caused. The complaint further alleged, among other things, that Laticrete discontinued the product because of other consumers experiencing the same problem, and Standard Tile removed the product from its shelves.

According to plaintiff's complaint, Laticrete requested an estimate for the cost to repair the damage caused by the grout. Plaintiff provided an estimate from Weber to both Laticrete and Standard Tile but the estimate was rejected "as too costly." In response, plaintiff contacted another "grout removal expert," who was recommended by Standard Tile, but this individual declined to provide an estimate "due to the difficulty and liability associated with said repair work."

After plaintiff failed to serve an expert report and discovery responses, Laticrete and Standard Tile moved for summary judgment. Laticrete argued that plaintiff could not establish the necessary elements of his design defect and manufacturing claims. Standard argued that it did not exercise any control over

3

the design, manufacture, packaging, or labeling of the grout. The trial court found:

> [p]laintiff has failed in presenting a prima facie case against both [d]efendants in this case because absent the testimony of an expert witness at trial, he will be unable to establish the existence of a defect. The plaintiff's complaint cannot survive a motion for summary judgment if proof of a defect will not be established at trial.

In noting there was confusion as to whether plaintiff alleged a manufacturing or design defect theory, the judge explained:

> [p]laintiff alleges that the grout disintegrated after it was installed. Because of the complexity of the grout formula, composition and usage, there is no question that expert testimony is required to establish the existence of a defect. The issue of whether the grout product was defectively manufactured cannot be based on common judgment and experience from which a jury can form a valid judgment.

As to Standard Tile, the judge articulated that:

> [p]laintiff must establish, pursuant to subsection (d)(2)[1] above, that [Standard] knew or should have known of

---

[1] N.J.S.A. 2A:58C-9(d)(2) provides:

> A product seller shall be liable if:
> (2) The product seller knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of

the defect, or that [Standard] was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the defect. Putting aside whether [plaintiff] would be able to establish any state of knowledge by Standard Tile, which are likely fact issues, [p]laintiff must still prove the existence of a defect in the product to prevail. . . . [and] there is no question that expert testimony is required to establish the existence of a defect.

The court entered an order dismissing plaintiff's claims against Standard Tile and Laticrete with prejudice.

## II.

On appeal, plaintiff presents three arguments in challenging the October 9, 2018 order granting summary judgment to Standard Tile and Laticrete. Plaintiff contends: (1) summary judgment should have been denied because there were disputed issues of material fact; (2) expert testimony is not needed to show the design and/or manufacturing defect of the grout because plaintiff established a prima facie case of product liability under the Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11; and (3) the trial court erred because plaintiff did in fact have an expert witness available to testify at trial.

---

facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage . . . .

5

In his reply brief, plaintiff also contends that: (1) Laticrete's introduction of the economic loss doctrine is inapplicable here; (2) plaintiff was not properly served with Form A(2) Interrogatories in accordance with Rule 4:17-3; and (3) summary judgment was prematurely granted prior to the completion of discovery.

In reviewing a summary judgment order, we use a de novo standard of review and apply the same standard employed by the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). Accordingly, we determine whether the moving party has demonstrated that there were no genuine disputes as to material facts and, if so, whether the facts, viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law. Id. at 405-06; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c).

The PLA recognizes three claims: design defect, manufacturing defect, and failure to warn. N.J.S.A. 2A:58C-2; Roberts v. Rich Foods, Inc., 139 N.J. 365, 375 (1995); Dziewiecki v. Bakula, 361 N.J. Super. 90, 97 (App. Div. 2003). Here, plaintiff has not asserted a failure to warn claim. Accordingly, we analyze his claims of design defect and manufacturing defect.

A-1322-18T2

To prove a design defect under the PLA, a plaintiff must establish that the product was "designed in a defective manner." N.J.S.A. 2A:58C-2(c). Moreover, a plaintiff must demonstrate that the product "was not reasonably fit, suitable or safe for its intended purpose." Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95 (1990) (quoting N.J.S.A. 2A:58C-2). Accordingly, a plaintiff must prove either that the product's risk outweighs its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm. Lewis v. Am. Cyanamid Co., 155 N.J. 544, 569 (1998).

A manufacturing defect is a "deviat[ion] from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae . . . ." N.J.S.A. 2A:58C-2. Under both the design defect and manufacturing theories, plaintiff must prove "that the product was defective, that the defect existed when the product left the manufacturer's control, and that the defect proximately caused injuries to the plaintiff, a reasonably foreseeable or intended user." Myrlak v. Port Auth., 157 N.J. 84, 97 (1999).

Plaintiff did not specify in his complaint whether the alleged defect was one in design or manufacturing. On appeal, plaintiff contends that the product

7

was defectively designed, and the trial court improperly utilized language relating to a manufacturing defect as a basis for granting summary judgment.

Regardless of which type of defect plaintiff claims the product had, he was required to present expert testimony as to whether the plasma grout was defective. Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 174 (1979) ("Though the nature of the proof to demonstrate that the product was defective may differ, the ultimate jury test is the same. Suitability and safety are implicated whether the defect in the product is due to an imperfection in the material or improper design.").

While often relied upon, "expert testimony is not invariably required" for any of the methods used to prove defect. Macri v. Ames McDonough Co., 211 N.J. Super. 636, 642 (App. Div. 1986). Instead, "the trial court should determine, based on all the evidence presented, whether the knowledge and experience of the jurors, unaided by expert testimony, provides a sufficient basis to determine the factual issue . . . ." Id. at 643. Expert testimony is necessary when "the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982). In those situations, experts are needed to help the fact-finder understand "the

mechanical intricacies of the instrumentality." Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 546 (App. Div. 1996). Here, we are persuaded that plaintiff was required to present expert testimony to support his claims against Standard Tile and Laticrete, and therefore, dismissal of the complaint on summary judgment was appropriate.

Plaintiff also argues that Laticrete sent an inspector to his home to inspect the damage caused by the plasma grout. The inspector acknowledged the grout was "defective" to plaintiff and that other users of the grout experienced the same problem as plaintiff. With respect to Standard Tile, plaintiff was told that other customers had similar issues with the plasma grout. In an October 17, 2016 email sent from Standard Tile to plaintiff, he was advised: "Plasma grout is not supposed to be used on shower floors and you shouldn't have been sold it for that application. I apologize for that." Plaintiff argues that these communications create a genuine issue of material fact as to whether the plasma grout was defective. We disagree.

The res ipsa loquitur doctrine is not available to product liability plaintiffs. Myrlak, 157 N.J. at 90. And, while discontinuation of the plasma grout may evidence remedial conduct by Laticrete, it does not dispense with the need for expert testimony because it is not self-evident that the plasma grout was

defectively designed. The trial judge aptly found that due to the "complexity of the grout formula, composition and usage," expert testimony was required to prove the existence of a defect.

Plaintiff next argues that in any event, Weber was available to provide expert testimony on the day of trial. After reviewing the "streamlined" website instructions for proceeding with a case in the Special Civil Part, plaintiff claims he was prepared to try the case by producing his wife and general contractor as fact witnesses and Weber as an expert witness. Plaintiff also asserts he had: documentary evidence, including notes, following the Laticrete inspection; a pail of the plasma grout with usage labels; correspondence from defendants; and website pages showing Laticrete discontinued the product and multiple contractors across the country experienced similar problems with the plasma grout. We see no merit to plaintiff's arguments.

The instructions for how to prepare for trial in the Special Civil Part do not dispense with the statutory criteria a plaintiff must prove under the PLA, the obligation to answer discovery requests, or the need for expert testimony in a case such as this one. Thus, summary judgment was appropriately granted to Standard Tile and Laticrete.

A-1322-18T2

III.

In his reply brief, plaintiff argues that defendants did not properly serve "original" Form A(2) Interrogatories upon him as required by Rule 4:17-3.  He argues that because this action does not satisfy any exception set forth in Rule 6:4-3(a) or (b),[2] it is governed by Rule 4:17.

Rule 4:17-3 requires "[t]he party serving the interrogatories . . . [to] furnish the answering party with the original thereof."  Form A(2) Interrogatories are specifically tailored towards products liability actions.  Rule 4:17-1(b)(1) limits interrogatories to those prescribed by Form A of Appendix II, plus ten supplemental questions, without subparts, without seeking leave of court.

Rule 4:17-1(b)(2) provides for "Automatic Service of Uniform Interrogatories," and states:  "The plaintiff in such an action [subject to uniform interrogatories] shall be deemed to have been served with uniform interrogatories simultaneously with service of defendant's answer to the

---

[2]  Except as otherwise provided by Rule 6:4-3(b), interrogatories may be served pursuant to the applicable provisions of Rule 4:17 in all actions except forcible entry and detainer actions, summary landlord and tenant actions for the recovery of premises, and actions commenced or pending in the Small Claims Section. The [forty]-day and [sixty]-day periods prescribed by Rule 4:17-2 and Rule 4:17-4, respectively, are each reduced to [thirty] days in Special Civil Part actions.

complaint and shall serve answers to the interrogatories within [thirty] days after service of the answer to the complaint."

In accordance with Rule 4:17-1(b)(2), plaintiff was deemed served with Form A(2) Interrogatories upon the filing of defendants' answers to the complaint. Plaintiff was required to provide certified answers thereto within thirty days thereafter. Defendants properly served the interrogatories and plaintiff was required to produce answers and an expert report.

One of the purposes of interrogatories is "to require one's adversary to provide disclosure as to positions being taken in the litigation . . . ." Vitti v. Brown, 359 N.J. Super. 40, 46-47 (Law Div. 2003). "The discovery rules 'were designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits to the end that judgments therein be rested upon the real merits of the causes and not upon the skill and maneuvering of counsel.'" Wymbs v. Twp. of Wayne, 163 N.J. 523, 543 (2000) (quoting Evtush v. Hudson Bus Transp. Co., 7 N.J. 167, 173 (1951)).

We conclude that the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1322-18T2